1   ROHDE & VICTOROFF
    GREG VICTOROFF, ESQ.  (SBN 89688)
2   STEPHEN F. ROHDE, ESQ. (SBN 51446)
    1880 Century Park East, Suite 411
3   Los Angeles, California  90067
    (310) 277-1482
4   Greg@rohde-victoroff.com

5   Attorneys for Defendant
    and Third Party Plaintiff
6   TACONY CORPORATION

7

FILED

2009 JUN 26 PM 12: 15
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY:_____

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| IMAGELINE, INC.,<br>a Virginia corporation;<br><br>             Plaintiff<br><br>vs.<br><br>TACONY CORPORATION, a<br>Missouri corporation; and DOES 1<br>through 10, inclusive,<br><br>         Defendants.<br>_____<br><br>TACONY CORPORATION, a<br>Missouri corporation,<br><br>       Third Party Plaintiff<br><br>vs.<br><br>ACTION TAPES, INC.  a Texas<br>corporation; JOHN DEER, an<br>individual; and ROES 1 through 50,<br>inclusive,<br><br>       Third Party Defendants | **CASE NO.  SACV 09-0353 CJC MLGx**<br><br>**THIRD PARTY COMPLAINT (IMPLEADER) FOR:**<br><br>1)  **Breach of Express Written Warranty;**<br><br>2)  **Breach of Implied Warranty of Fitness;**<br><br>3)  **Breach of Implied Warranty of Merchantability**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Third Party Plaintiff TACONY CORPORATION, complains against the above-named Third Party Defendants and alleges as follows:

1

**THIRD PARTY COMPLAINT (IMPLEADER)**

## JURISDICTION AND VENUE

1.     This is a Third Party Complaint for Indemnity, Breach of Express and Implied Warranties and Breach of Contract [Impleader] under *Federal Rules of Civil Procedure*, Rule 14.  Third party claims set forth herein arise out of the same nucleus of operative facts as Plaintiff IMAGELINE'S claims against Defendant TACONY in the main action, giving the court supplemental jurisdiction over the subject matter of this Third Party Complaint under 28 U.S.C. §§ 1367(a), (b).

2.     Venue is proper before this court pursuant to 28 U.S.C. §1391(b), which grants jurisdiction in non-diversity actions in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated.

## PARTIES

3.     Third Party Plaintiff TACONY CORPORATION (hereinafter to as "TACONY" or "Third Party Plaintiff") is a corporation duly organized under the laws of the state of Missouri with its principle place of business in Fenton, Missouri with an office in Fullerton, California. Under the trade name "Amazing Designs" TACONY is engaged in the business of selling embroidery designs which it obtains from third party vendors for use in embroidery machines distributed by TACONY and others.

4.     On information and belief, at all relevant times Third Party Defendant ACTION TAPES, INC.  ("ACTION TAPES") was and is a corporation organized under the laws of the State of Texas with its principle place of business in Dallas, Texas. Under the trade name "Great Notions" ACTION TAPES was at all relevant

**THIRD PARTY COMPLAINT (IMPLEADER)**

1  times engaged in the business of digitizing and licensing embroidery designs
2  marketed and sold by TACONY and others.

3

4       5.       On information and belief, at all relevant times, Third Party Defendant
5  John Deer ("DEER") was and is an individual residing in Barrie, Ontario, Canada
6  engaged in the business of digitizing embroidery designs marketed and offered
7  for sale by TACONY and others, doing business in Missouri, California and
8  elsewhere.

9

10      6.       On information and belief, each fictitiously named ROE Third Party
11 Defendant is and was at all times relevant hereto, the agents, servants, employees
12 and/or joint venturers of each of the other Third Party Defendants and at all times
13 relevant hereto was acting in the course and scope of such agency, employment or
14 joint venture.

15

16      7.       The true names and capacities of Third Party Defendants ROES 1- 50,
17 inclusive are currently unknown to TACONY and are sued herein as fictitiously
18 named Third Party Defendants. On information and belief, each such ROE Third
19 Party Defendant is responsible in some way for the damages alleged herein, in
20 whole or in part. TACONY will seek leave to amend this Third Party Complaint to
21 allege the true names and capacities of such ROE Third Party Defendants when they
22 are ascertained. Each reference to "Third Party Defendants" herein refers to each
23 and every fictitiously named Third Party Defendant, in addition to any specifically
24 named Third Party Defendant.
25 ///
26 ///
27 ///
28

**THIRD PARTY COMPLAINT (IMPLEADER)**

# GENERAL ALLEGATIONS

8.    In or about 1995 and again in 2001, Third Party Plaintiff TACONY entered into exclusive written Distribution Agreements with Third Party Defendant ACTION TAPES whereby TACONY agreed to be the exclusive distributor of ACTION TAPES' discs and RAM cards embodying various embroidery designs, subject to certain limitations, (hereafter the "Action Tapes Distribution Agreement"). A true and correct copy of the 2001 Action Tapes Distribution Agreement is attached hereto marked Exhibit "A" and incorporated herein by reference.

9.    In January 2006 ACTION TAPES and TACONY entered into a written Mediation Settlement Agreement superseding all prior agreements, including the Distribution Agreement, pursuant to which, in paragraph 9(b), ACTION TAPES expressly warranted that products provided to TACONY did not violate any intellectual property rights of any third party and expressly agreed to indemnify TACONY for any expenses incurred as a result of any third party claims of infringement. A true and correct copy of the Mediation Settlement Agreement is attached hereto marked Exhibit "B" and incorporated herein by reference.

10.    In December 2006, DEER and TACONY entered into a written distribution agreement ("Deer Distribution Agreement") whereby TACONY agreed to distribute and sell embroidery designs and related products created, owned and supplied by DEER. Under Paragraph 10 of the agreement DEER expressly warranted that DEER was the sole owner of all the designs which form his library, that the designs therein were original and did not violate the rights of any third party, and that DEER would hold TACONY harmless and indemnify it against any third party claims of infringement. A true and correct copy of the Deer Distribution

1  Agreement is attached hereto marked Exhibit "C" and incorporated herein by

2  reference.

3

4                          **FIRST CLAIM FOR RELIEF**
                      For Breach of Express Warranty and Indemnity
5                        (Against All Third Party Defendants)

6       11.    TACONY repeats and realleges all of the allegations set forth in

7  paragraphs 1 through 10 above as though set forth here in full.

8

9       12.    On March 20, 2009 IMAGELINE brought an action against Third

10 Party Plaintiff herein, TACONY in the United States District Court for the Central

11 District of California, Southern Division, Case No. SACV 09-0353 CJC MLGx

12 entitled *Imageline, Etc. Vs. Tacony Corporation*, etc. (the "Action") for damages for

13 copyright infringement arising from TACONY's advertising and possible sale of

14 approximately thirty nine (39) specified designs supplied by Third Party Defendant

15 ACTION TAPES and four (4) designs supplied by Third Party Defendant DEER.

16

17      13.    True and correct copies of the thirty nine (39) allegedly infringing

18 designs supplied by Third Party Defendant ACTION TAPES ("39 Accused AT

19 Designs") are attached hereto collectively marked Exhibit "D" and incorporated

20 herein by reference. True and correct copies of the four (4) designs supplied by

21 Third Party Defendant DEER ("4 Accused Deer Designs") are attached hereto

22 collectively marked Exhibit "E" and incorporated herein by reference.

23

24      14.    On information and belief, TACONY gave written notice of the Action

25 to ACTION TAPES in or about April 2009 and gave written notice of the Action to

26 DEER in or about June 2009, requesting defense of the Action by ACTION TAPES

27 and DEER and indicating that Third Party Defendants ACTION TAPES and DEER

28 were bound by the warranties and indemnities in the above referenced Mediation

**THIRD PARTY COMPLAINT (IMPLEADER)**

1   Settlement Agreement (as to ACTION TAPES ) and the Deer Distribution
2   Agreement (as to DEER). Notwithstanding said written notice and demand, neither
3   ACTION TAPES nor DEER have undertaken the defense of the Action and have
4   effectively refused to indemnify TACONY for any loss or liability resulting from
5   the Action.

6

7        15.    Third Party Plaintiff TACONY has performed all the conditions and
8   obligations to be performed on its part under the Mediation Settlement Agreement
9   with ACTION TAPES and under the Deer Distribution Agreement with DEER,
10  other than as prevented, excused, expired or made impossible by one or both Third
11  Party Defendants.

12

13       16.    By reason of the foregoing TACONY is entitled to be indemnified by
14  ACTION TAPES and DEER for TACONY's expenses incurred in defending the
15  Action, but neither Third Party Defendant has paid any part of this sum to
16  TACONY.

17

18       17.    TACONY has incurred and continues to incur necessary and
19  reasonable attorneys' fees and costs in defending the Action and prosecuting this
20  Impleader action against Third Party Defendants ACTION TAPES and DEER.
21  Further, as provided in the Mediation Settlement Agreement with ACTION TAPES
22  and the Deer Distribution Agreement with DEER, TACONY licensed and
23  purchased the 39 Accused AT Designs (Ex. "D") from ACTION TAPES and the 4
24  Accused Deer Designs (Ex."E") from DEER to re-sell and sub-license to
25  TACONY's customers. TACONY has incurred and will in the future incur further
26  direct and consequential damages in the form of lost sales and cost of cover for
27  substitute goods and otherwise as a proximate result of the Action.

28

6

**THIRD PARTY COMPLAINT (IMPLEADER)**

18.   Under the terms of the Mediation Settlement Agreement (as to ACTION TAPES ) and the Deer Distribution Agreement (as to DEER), TACONY is entitled to recover all such damages, fees and costs from ACTION TAPES and DEER. TACONY is not currently aware of the total amount of direct and consequential damages, fees, costs and other expenses and damages incurred and to be incurred in connection with the Action and this Third Party action and will seek leave to amend the complaint when the full amount becomes known.

### SECOND CLAIM FOR RELIEF
For Breach of Implied Warranty of Fitness
(Against All Third Party Defendants)
*[Uniform Commercial Code §2-315]*

19.   TACONY repeats and realleges all of the allegations set forth in paragraphs 1 through 18 above as though set forth here in full.

20.   In or about 1995 and again in 2001, Third Party Plaintiff TACONY entered into exclusive written Distribution Agreements with Third Party Defendant ACTION TAPES whereby ACTION TAPES granted to TACONY an exclusive license to distribute to TACONY's customers, ACTION TAPES' discs and RAM cards embodying various embroidery designs (Ex. "A"), including the 39 Accused AT Designs (Ex. "D").

21.   In December 2006, DEER and TACONY entered into the Deer Distribution Agreement whereby DEER granted TACONY a license to distribute and sell embroidery designs and related products created, owned and supplied by DEER (Ex. "C"), including the 4 Accused Deer Designs (Ex. "E").

22.   At the time the parties entered into the Action Tapes Distribution

7
**THIRD PARTY COMPLAINT (IMPLEADER)**

1  Agreement and the Deer Distribution Agreement, ACTION TAPES and DEER both

2  knew or had reason to know the particular purpose for which the embroidery

3  designs and related products were intended: to re-sell and sub-license to

4  TACONY's customers to use to create art and crafts and derivative works for

5  personal and commercial uses. By virtue of the fact that such purpose was expressly

6  communicated to ACTION TAPES' and DEER orally and in writing, TACONY

7  was relying on ACTION TAPES' and DEER's skill and judgment to furnish

8  suitable goods, so that there was an implied warranty that the goods were fit for

9  such purpose.

10

11      23.    ACTION TAPES and DEER breached each of their respective implied

12  warranties of fitness made at the time their respective agreements were entered into

13  in that TACONY did not receive suitable goods and such goods were not fit for the

14  particular purpose for which they were provided, in that the 39 Accused AT Designs

15  and the 4 Accused Deer Designs allegedly infringe the copyrights of IMAGELINE,

16  Plaintiff in the Action.

17

18      24.    TACONY gave written notice to ACTION TAPES of the Action in or

19  about April 2009 and gave written notice of the Action to DEER in or about June

20  2009, and, on information and belief, indicating that Third Party Defendants

21  ACTION TAPES and DEER were bound by the implied warranties of fitness arising

22  out of products provided to TACONY.

23

24      25.    TACONY has incurred and continues to incur necessary and

25  reasonable attorneys' fees and costs in defending the Action and prosecuting this

26  Impleader action against  Third Party Defendants ACTION TAPES and DEER.

27  Further, TACONY has incurred and will in the future incur direct and consequential

28  damages in the form of lost sales and cost of cover for substitute goods and

**THIRD PARTY COMPLAINT (IMPLEADER)**

1  otherwise as a proximate result of the Action. TACONY is not currently aware of
2  the total amount of direct and consequential damages, fees, costs and other expenses
3  and damages incurred and to be incurred in connection with the Action and this
4  Third Party action and will seek leave to amend the complaint when the full amount
5  becomes known.

**THIRD CLAIM FOR RELIEF**
For Breach of Implied Warranty of Merchantability
(Against All Third Party Defendants)
[*Uniform Commercial Code §2-314*]

26.   TACONY repeats and realleges all of the allegations set forth in
paragraphs 1 through 25 above as though set forth here in full.

27.   In or about 1995 and again in 2001, Third Party Plaintiff TACONY
entered into exclusive written Distribution Agreements with Third Party Defendant
ACTION TAPES whereby ACTION TAPES granted to TACONY an exclusive
license to distribute to TACONY's customers ACTION TAPES' discs and RAM
cards embodying various embroidery designs (Ex. "A"), including the 39 Accused
AT Designs (Ex. "D").

28.   In December 2006, DEER and TACONY entered into the Deer
Distribution Agreement whereby DEER granted TACONY a license to distribute
and sell embroidery designs and related products created, owned and supplied by
DEER (Ex. "C"), including the 4 Accused Deer Designs (Ex. "E").

29.   At all times relevant hereto, ACTION TAPES and DEER were
merchants with respect to goods of the kind that were licensed and supplied to
TACONY by ACTION TAPES and DEER and there was in the licensing to

1   TACONY, an implied warranty that the goods supplied were merchantable.

2

3        30.    ACTION TAPES and DEER breached each of their respective implied

4   warranties of merchantability in that TACONY did not receive suitable goods and

5   such goods were not merchantable, the 39 Accused AT Designs and the 4 Accused

6   Deer Designs were unfit for the particular purpose for which they were sold, did not

7   conform to the copyright notices on the packaging and labels provided with the

8   goods and allegedly infringe the copyrights of Plaintiff in the Action, IMAGELINE.

9

10       31.    TACONY gave written notice to ACTION TAPES of the Action in or

11  about April 2009 and gave written notice of the Action to DEER in or about June

12  2009, and, on information and belief, indicating that Third Party Defendants

13  ACTION TAPES and DEER were bound by the implied warranties of

14  merchantability arising out of products provided to TACONY.

15

16       32.    TACONY has incurred and continues to incur necessary and

17  reasonable attorneys' fees and costs in defending the Action and prosecuting this

18  Impleader action against Third Party Defendants ACTION TAPES and DEER.

19  Further, TACONY has incurred and will in the future incur direct and consequential

20  damages in the form of lost sales and cost of cover for substitute goods and

21  otherwise as a proximate result of the Action. TACONY is not currently aware of

22  the total amount of direct and consequential damages, fees, costs and other expenses

23  and damages incurred and to be incurred in connection with the Action and this

24  Third Party action and will seek leave to amend the complaint when the full amount

25  becomes known.

26  ///

27  ///

28  ///

1   WHEREFORE, Third party Plaintiff TACONY prays for judgment against

2   each of the Third Party Defendants as follows:

3

4   ## ON THE FIRST CLAIM FOR RELIEF
    ### Against All Third Party Defendants

5

6   1.   For all direct monetary damages proximately caused by the breach of

7   the express warranties set forth in ACTION TAPES' and DEER's respective written

8   agreements with TACONY including without limitation, TACONY's attorneys'

9   fees and costs in defending the Action and prosecuting this Impleader action against

10  Third Party Defendants ACTION TAPES and DEER.

11

12  2.   For all past, present and future direct and consequential damages in the

13  form of lost sales, costs of cover for substitute goods, and otherwise incurred as a

14  proximate result of the Action.

15

16  3.   For such other and further relief as the court deems just and proper.

17

18  ## ON THE SECOND CLAIM FOR RELIEF
    ### Against All Third Party Defendants

19

20  1.   For all direct monetary damages proximately caused by the breach of

21  the implied warranty of fitness made by ACTION TAPES and DEER at the time

22  their respective agreements were entered into with TACONY, including without

23  limitation TACONY's attorneys' fees and costs in defending the Action and

24  prosecuting this Impleader action against Third Party Defendants ACTION TAPES

25  and DEER.

26

27  2.   For all past, present and future direct and consequential damages in the

28  form of lost sales, costs of cover for substitute goods, and otherwise incurred as a

11

**THIRD PARTY COMPLAINT (IMPLEADER)**

1

## **DEMAND FOR JURY TRIAL**

2      Third Party Plaintiff TACONY CORPORATION hereby demands a trial by

3 jury.

4
5                                            Respectfully submitted,
                                             ROHDE & VICTOROFF
6 Dated: June 25, 2009
                                    By: _____
7                                            GREG VICTOROFF
                                             Attorneys for Defendant and
8                                            Third Party Plaintiff
                                             TACONY CORPORATION
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

13

**THIRD PARTY COMPLAINT (IMPLEADER)**

1  proximate result of the Action.

2

3      3.      For such other and further relief as the court deems just and proper.

4

5                    ON THE THIRD CLAIM FOR RELIEF
6                     Against All Third Party Defendants

7      1.      For all direct monetary damages proximately caused by the breach of

8  the implied warranty of merchantability made by ACTION TAPES and DEER at the

9  time their respective agreements were entered into with TACONY, including

10 without limitation TACONY's attorneys' fees and costs in defending the Action and

11 prosecuting this Impleader action against Third Party Defendants ACTION TAPES

12 and DEER.

13

14     2.      For all past, present and future direct and consequential damages in the

15 form of lost sales, costs of cover for substitute goods, and otherwise incurred as a

16 proximate result of the Action.

17

18     3.      For such other and further relief as the court deems just and proper.

19                          Respectfully submitted,
20                          ROHDE & VICTOROFF

21 Dated: June 25, 2009
                            By: _____
22                              GREG VICTOROFF
                                Attorneys for Defendant and
23                              Third Party Plaintiff
                                TACONY CORPORATION

24

25

26

27

28

                                    12
                    THIRD PARTY COMPLAINT (IMPLEADER)

1
## DEMAND FOR JURY TRIAL

2        Third Party Plaintiff TACONY CORPORATION hereby demands a trial by

3   jury.

4
                                    Respectfully submitted,
5                                   ROHDE & VICTOROFF

6   Dated: June 25, 2009
                                    By: _____
7                                       GREG VICTOROFF
                                        Attorneys for Defendant and
8                                       Third Party Plaintiff
                                        TACONY CORPORATION
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD PARTY COMPLAINT (IMPLEADER)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A
# (18 Pages)

DISTRIBUTION AGREEMENT

This Distribution Agreement ("Agreement") is made and entered into as of the 20th day of December, 2001, by and between Action Tapes, Inc., a Texas corporation, d/b/a Great Notions ("Great Notions") and Tacony Corporation, a Missouri corporation ("Tacony"), collectively referred to hereinafter as the "Parties".

**WHEREAS,** Great Notions produces (1) stock embroidery designs on computer disk ("Design Disks") and RAM memory cards ("RAM Cards") for use with household sewing machine systems produced by several manufacturers (with output to Tajima ("DST"), Pfaff ("PCS"), Viking ("HUS"), Brother, Baby Lock, Poem ("CSD"), Simplicity (PES), Janome (SEW), Singer (XXX), Viking (SHV) and/or other disk formats in the home sewing market), (2) certain embroidery products which are limited to third-party sewing machine manufacturers ("Original Equipment Manufacturer Products" or "OEM Products"), and (3) existing embroidery software and hardware solutions that are not specific to any particular designs, but are sold under the Amazing Designs name ("Amazing Designs Suite"); and

**WHEREAS,** Great Notions expects to produce additional Design Disks, RAM Cards, Amazing Designs Suite products and embroidery software products intended for use with household sewing machine systems; and

**WHEREAS,** Tacony has distributed products on behalf of Great Notions under a Distribution Agreement that is due to expire at the end of the calendar year 2001; and

**WHEREAS,** Great Notions desires to continue Tacony as its Exclusive Distributor, as that term is hereinafter more fully defined, within the North American household sewing machine market (the "Designated Market") the Design Disks and RAM Cards, during the Term hereof, and Tacony desires to continue to purchase exclusively from Great Notions any designs produced for the Amazing Designs Brand for the duration of such appointment; and

**WHEREAS,** the Parties wish to make provisions with respect to OEM Products, the Amazing Designs Suite and future software products that Great Notions has not yet developed, all as described below;

**NOW THEREFORE,** in consideration of the mutual covenants and premises set forth herein, the receipt and sufficiency of which are both hereby acknowledged, the parties agree as follows:

1.   **APPOINTMENT AND TERM.**

   (a)   **Appointment.** During the Term (as defined in Section 1 (b) below), Great Notions hereby appoints Tacony as its Exclusive Distributor of Design Disks and RAM Cards, to the Designated Market only, and Tacony hereby accepts and agrees to such appointment. Tacony hereby agrees that Great Notions will be its

---

**Exhibit "A" to Third Party Complaint (18 Pages)** 14

Distribution Agreement

Page 1 of 18

exclusive supply of the Design Disks and RAM Cards for use in the Designated Market during the Term. Notwithstanding the foregoing, however, the Parties acknowledge and agree as follows:

(1) **Tacony's prior relationship.** During the Term, Tacony shall retain the right to buy RAM Cards and other embroidery software products from any manufacturer of household sewing machines if Tacony distributes such manufacturer's machines as of the effective date of this Agreement

(2) **Products not offered by Great Notions.** If a third-party offers Tacony a unique product that would fall under this exclusive clause, Great Notions shall be given thirty (30) calendar days to decide whether it desires, in its sole and complete discretion, to provide the same or similar product to Tacony. Great Notions shall inform Tacony of its decision in writing on or before the thirtieth (30th) calendar day following the date that it receives written notice from Tacony of the third-party offer. In the event that Great Notions decides to not provide the unique product to Tacony, then Tacony may purchase the product from the specified third-party. In the event that Great Notions decides to provide the new product, it shall be granted a reasonable time to create, design, produce, manufacture, and/or procure the product for sale and distribution by Tacony.

(3) **Great Notions' ability to sell to sewing machine OEM's.** During the Term of this Agreement, Great Notions retains the right to produce and sell licensed RAM cards to third-party sewing machine OEM's if Great Notions has previously offered the licensed cards to Tacony and Tacony has opted not to purchase the licensed card. In addition, Great Notions may digitize original artwork submitted to it by a third-party sewing machine OEM and produce RAM cards or other media for that third-party to fit the OEM's machines exclusively. Great Notions does not have to offer to Tacony any such custom-designed products and, in fact, may be contractually prohibited from doing so.

(b) **Term.** This Agreement shall commence on and be effective from January 1, 2002, to and including December 31, 2006 (the "Term"), both dates inclusive; provided, however, that the Agreement Term shall be extended automatically on the same terms and conditions for additional one-year periods, unless either Party gives the other Party written notice of termination at least one hundred twenty (120) days prior to the beginning of an additional one-year period.

(c) **Reservation of Rights.** Great Notions specifically reserves and shall have the sole right to distribute, sell or otherwise use the Design Disks and the designs embodied therein in any and all manner and media not expressly licensed to Tacony hereunder, including, without limitation, sales and distribution to the industrial sewing markets.

(d) **Ownership.**

*15*

Tacony specifically acknowledges that the Design Disks and the RAM Cards, the designs embodied therein, the name "Great Notions" and all copyrights, trademarks and other proprietary rights in or associated therewith are owned exclusively by Great Notions. Tacony shall not acquire and shall not claim any title thereto and shall derive no rights hereunder to use or manufacture, market or distribute any merchandise or materials utilizing Great Notions' proprietary rights, except as expressly provided in this Agreement.

(2)   Great Notions specifically acknowledges that the names "Amazing Designs" and "Amazing Box" and all trademarks now or later registered to Tacony and other proprietary rights in or associated therewith are owned exclusively by Tacony. Great Notions shall not acquire and shall not claim any title thereto and shall derive no rights hereunder to use or manufacture, market or distribute any merchandise or materials utilizing Tacony's proprietary rights, except as expressly provided in the Agreement.

## DISTRIBUTION, MARKETING, ADMINISTRATION AND TECHNICAL SUPPORT.

(a)   **Level of Effort Required.** Tacony shall use its best efforts during the Term to diligently and continuously promote, market, sell, and distribute the Design Disks and the RAM Cards, in commercially reasonable quantities.

(b)   **Training and Technical Support.** The Parties acknowledge that retailers and consumers need information on Design Disks, RAM Cards and products in the Amazing Designs Suite (collectively "Amazing Designs Products"). Tacony will provide a toll-free number and e-mail access for retailers to use to obtain service and support on Amazing Designs Products ("Dealer Help Line"). Tacony shall staff the Dealer Help Line during normal business hours. In addition, Tacony will provide information on Amazing Designs Products on its website. Great Notions will provide a toll-free number and e-mail access for consumers to use to obtain service and support on Amazing Designs Products ("Consumer Help Line"). Great Notions shall staff the Consumer Help Line during regular business days and until nine o'clock (9:00) p.m. (Central Time), and will consider providing such support on the weekends if the parties agree that is necessary.

(c)   **Image and Reputation: Compliance with Regulations.** Neither Party will knowingly do or cause to be done anything which may adversely affect the sales of Great Notions or Amazing Designs Products, or the name, image or reputation of the other Party. Tacony shall promote, market, sell and distribute Amazing Designs Products in accordance with the terms and intent of this Agreement and in compliance with all applicable authorizations and regulations.

*16*

Marketing Plan. At Great Notion's request from time-to-time, Tacony shall provide Great Notions with descriptions and details of Tacony's marketing and distribution programs relating to Amazing Designs Products. When commercially feasible, Tacony will provide Great Notions with the opportunity to comment on and provide input as to such programs, and Tacony agrees to consider such comments and input in its development and implementation of such programs.

(e) **Trade Show Participation.** As more fully hereinafter explained, from time-to-time Tacony will attend trade shows in order to advertise and develop interest in the Amazing Designs Products. In the event that the Parties agree that a new booth should be constructed for such use, Great Notions will consider splitting the reasonable cost designing and manufacturing of a new booth to be used to exclusively display Amazing Designs Products at jointly selected and agreed-upon trade shows. Tacony shall be responsible at its sole cost and expense for setting up and taking down any booth used by the Parties at trade shows. Tacony shall provide, at its sole cost and expense, all required or appropriate signage and markers identifying the booth as containing Amazing Designs Products, and for all shelving, tables, or other structures necessary to attractively display the Amazing Designs Products. Tacony shall provide at its sole cost and expense one (1) or more qualified and knowledgeable marketing persons to staff the booth. It is agreed by the Parties that the qualified marketing person(s) provided by Tacony will be thoroughly familiar with the Amazing Designs Products and will be able to authoritatively respond to questions about the Amazing Designs Products.

## APPROVAL AND QUALITY.

(a) **Development of new Designs and Design Themes.** Great Notions agrees to make available to Tacony a minimum of from one (1) to six (6) RAM Cards and four (4) to ten (10) Design Disk packs each month, so long as Tacony schedules its needs by notifying Great Notions of the quantity requested with delivery to be at least one hundred twenty (120) days after it approves the design layouts submitted by Great Notions for RAM Cards and at least ninety (90) days after it approves the design layouts submitted by Great Notions for Design Disk packs. The Parties acknowledge that Tacony has already approved sufficient design layouts submitted by Great Notions for it to fulfill its obligations to make the minimum required RAM Cards and Design Disk packs available each month in the first calendar quarter of this Agreement. Tacony shall expedite its quality assurance approval of the RAM Cards, so that Great Notions does not experience any unreasonable delay in the approval of new designs and design themes. Great Notions shall develop the themes of the designs to be embodied on the Design Disks and RAM Cards to be distributed and sold hereunder, although Tacony and Great Notions will jointly work to develop design themes and packaging to be used hereunder. All proprietary rights in and to such themes and designs shall be and remain the sole property of Great Notions, as provided in Paragraph 3(d) and otherwise in this Agreement.

17

**Advertising.** Tacony agrees to annually spend an amount no less than ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of Tacony's gross sales on the advertising and marketing of Great Notions' products.

(1)     Marketing and advertising shall be spread out across the entire year, unless compelling market conditions or documented trends call for an increased or concentrated expenditure during any specific time or season.

(2)     When commercially feasible, Tacony will afford Great Notions a reasonable opportunity to comment on and provide input on advertising and marketing expenditures made hereunder.

(3)     Tacony may use textual and/or pictorial matter provided by Great Notions hereunder, or embodied in the Design Disks, RAM Cards or software in promotional, display and advertising material as may, in Tacony's reasonable judgment, promote the sale of Amazing Designs Products. Tacony agrees to include in all such material the copyright, trademark and/or other proprietary notices provided by Great Notions from time-to-time, evidencing Great Notions' intellectual property rights in the products.

(4)     On a calendar year basis, if one-half (1/2) of the actual amount of Tacony's costs of such advertising and marketing activities (net of any cross-promotional revenues received by Tacony from third parties) are less than ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Tacony will remit the difference to Great Notions.

(c)     **Changes and Modifications.** Any modification by Tacony to textual or pictorial matter provided by Great Notions, including, without limitation, any modification to any of the designs embodied in the Design Disks or RAM Cards, must be submitted in advance for Great Notions' written approval. Tacony agrees not to use such modified material unless Great Notions' advance written approval is first secured.

(d)     **Ownership of Proprietary Rights.**

(1)     Great Notions shall own all copyrights, trademarks and other proprietary rights in any and all artwork, including, without limitation, the name "Great Notions" and the designs embodied in the Design Disks and RAM Cards authorized for use hereunder by Tacony. Tacony further agrees that any and all copyrightable material developed by, or at the direction of Great Notions or Tacony for use hereunder by Tacony are works made for hire within the meaning of the United States Copyright Act and shall be owned in their entirety by Great Notions. To the extent any such material is not deemed to be a work made for hire, Tacony hereby assigns to Great Notions all copyrights, trademarks and other proprietary rights in such

18

material. Tacony agrees to execute and have executed by any of its employees who participate in the creating of any such material any additional documents reasonably requested by Great Notion to effectuate and confirm Great Notions' sole and exclusive ownership of such rights.

(2) Tacony warrants and represents that all contributions to the creation of design themes for the Design Disks, RAM Cards, or other creative material for use hereunder, shall be undertaken as works made for hire for Tacony on behalf of Great Notions to the extent possible or, if not possible, will so notify Great Notions prior to submission to Great Notions for approval pursuant to this Agreement and obtain a full assignment of all rights in such materials to Great Notions.

(3) Notwithstanding the above, Great Notions shall have no rights to any designs which it digitizes from artwork provided by Tacony exclusively for Tacony's Baby Lock or Elna sewing machine divisions for sale exclusively to its retail sewing machine dealers.

(e) **Notices.** Tacony shall cause all advertising, promotional, packaging and wrapping material prepared by or at the direction of Tacony, to display appropriate copyright and trademark notices or other indicia of identity. Unless and until modified in writing by Great Notions, the parties agree that Tacony will display the following notices when appropriate on all advertising, promotional, packaging and wrapping material prepared by or at the direction of Tacony pursuant to t his Agreement:

(1) **Trademark Notice:**

GREAT NOTIONS is a trademark of Action Tapes, Inc.
All rights reserved.

(2) **Copyright Notice:**

All designs contained herein Copyright © Action Tapes, Inc, d/b/a/ Great Notions.

## PAYMENTS BY GREAT NOTIONS FOR ADVERTISING AND PROMOTIONS.

During the Term of this Agreement, Great Notions shall pay Tacony the sum of ███████ ████████████████████████████ per month as its share of all advertising, educational, and promotional efforts. This money shall be spent exclusively on such things as advertising, promotions, direct mail solicitations and offers, each of which is designed to advertise Amazing Designs Products. Tacony shall invoice Great Notions monthly for this amount, beginning with February 1, 2001, and continuing through to the end of this Agreement. Tacony's advertising cost invoices shall be payable by Great Notions upon receipt.

5.    **PURCHASES AND PRICING.**

(a)    **Purchase Requirements.** Tacony agrees to purchase products from Great Notions in an amount totaling ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ during the first year of the Term, subject to the availability of products from Great Notions, including, but not limited to, software products being developed under the names Pattern Fill and Editing. The amount of purchased products in each subsequent year shall be at least ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇ per year, unless the Parties agree upon a different amount not less than sixty (60) days prior to the end of each calendar year and not later than the second week of December.

(b)    **Consequences of Failure to Purchase Minimum Agreed Volume.** If Tacony fails to purchase the required volume of Great Notions' products in any calendar year and the Parties are unable to agree on corrective action within thirty (30) days after the end of such year, Tacony shall not be obligated to pay Great Notions the difference between the agreed required volume of products and the amount of products actually purchased, however, Great Notions shall then have the right to terminate the Agreement on one hundred twenty (120) days' advance notice.

(c)    **Design Disk and RAM Card Pricing; Shipping Requirements.** The Parties agree that the price to be charged to Tacony by Great Notions should allow Tacony to sell such products to its customers in the United States competitively at wholesale and make an average annual gross profit of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Great Notions will ship Design Disks and RAM Cards to Tacony, F.O.B. Dallas, Texas, within forty-five (45) days of receipt by Great Notions of Tacony's written purchase order for such shipment. The Parties further agree that if Tacony sells any of the Amazing Designs Suite products to its existing Canadian distributor, such sale shall be at Tacony's actual cost and Great Notions shall pay to Tacony a service fee of twenty percent (20%) of the actual cost of the items sold to such distributor.

(d)    **Additional Great Notions Products.** The Parties anticipate that Great Notions may develop or produce additional embroidery products for the Designated Market. It is understood and agreed by the Parties that Great Notions shall have the unfettered and unrestricted right to negotiate with anyone, including Tacony or other third parties, concerning the purchase, sale, resale, and distribution of newly developed embroidery products other than RAM Cards and Disk Packs specifically developed for Tacony and those OEMs it represents as of the date of the execution of this Agreement.

6.    **PAYMENTS.**

(a)    **Payments.** Great Notions shall invoice Tacony for all purchases by Tacony hereunder. Payment terms shall be ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ discount to Tacony on purchases of RAM Cards when payment is within five (5)

---

days and on Disk Packs within ten- (10-) days, net sixty (60) days on the Disk Packs. All other purchases are net sixty (60) days. Neither the expiration nor the termination of this Agreement shall relieve Tacony from its payment obligations.

(b)    **Address for Payment.** All payments by Tacony to Great Notions hereunder shall be in United States dollars, delivered by wire transfer to the account of Great Notions to at the banking institution indicated hereinbelow:



(c)    **Right to Set-off.** Each Party reserves the right to offset money owed to the other against sums owed or anyone making a claim for payment against a Party.

7.    **DAMAGED AND AGED PRODUCTS.** Tacony may return any damaged product to Great Notions for exchange and Great Notions shall bear the freight expense associated with the return of the damaged product and shipment of the exchanged product, unless the product is damaged by Tacony or someone in privity with Tacony, and then Tacony shall bear the cost of shipment both ways. In addition, Tacony may return on a freight prepaid basis any Design Disks that are aged and have not sold for at least six (6) months for a fifty percent (50%) credit. Tacony may return RAM Cards to Great Notions on a freight prepaid basis and have them reprogrammed with designs requested by Tacony by paying a fee of ████████████████████████ for each reprogrammed RAM Card.

8.    **OEM PRODUCTS.**

The Parties acknowledge that Great Notions may provide embroidery designs on RAM cards or other media to third-party sewing machine OEMs. During the original term of this Agreement, as set out in §1 (b), above, Tacony shall have the exclusive right to receive a royalty for RAM Card designs manufactured for the Bernina and Husqvarna Viking companies. It is specifically understood and agreed that Great Notions has the right to continue to make, provide, and sell embroidery designs on RAM cards and/or on other forms of media to third-party sewing machine OEMs in formats which may be compatible with proprietary OEM machine. Great Notions agrees to notify Tacony of the amount of sales in the Bernina and Husqvarna formats in the month immediately after each such sale is made and to pay the following percentages on Great Notions' sales of such products:

(a)    ████████████████████ of its gross sales to third-party sewing machine OEMs in calendar year 2002;

(b)    ████████████████████ of its gross sales to third-party sewing machine OEMs in calendar year 2003;

machine OEMs in calendar year 2004;

(d)     No payment whatsoever (0.00%) beginning with 1/1/2005 and continuing at that rate throughout the remainder of this Agreement, including any agreed upon extension(s) of this Agreement.

On or before the fifteenth (15th) day of every calendar month beginning with February 2002, Great Notions shall report to Tacony the amount of payments received by Great Notions in the previous month as a result of its sales in the Bernina and Husquvarna formats and shall promptly remit the appropriate percentage of such payments to Tacony. It is specifically understood and agreed that Great Notions will owe no royalty payment to Tacony for embroidery designs it produces on RAM cards and/or on other forms of media that are sold to third-party sewing machine OEMs in formats other than Bernina and Husqvarna formats

9.    **MOST FAVORED CUSTOMER CLAUSE.** Notwithstanding anything contained herein to the contrary, Great Notions agrees that it will extend its best price for products to Tacony, so that if Great Notions sells one or more products to a third-party for less than the amount Tacony pays for similar products (after taking into account the Advertising payments made to Tacony under Section 3 (b) above), Great Notions will thereafter extend that same price and terms to Tacony.

10.    **WARRANTIES AND REPRESENTATIONS.**

(a)     Great Notions represents and warrants to Tacony and Tacony represents and warrants to Great Notions as follows:

      (1)     It has full power and authority to execute and deliver this Agreement and to perform the transactions contemplated hereby;

      (2)     The making of this Agreement does not, and during the Term will not, violate or conflict with any agreements, rights or obligations binding on or affecting such Party;

      (3)     This Agreement has been duly and properly authorized, executed and delivered by such Party and constitutes the legal, valid and binding obligation of such Party enforceable in accordance with its terms; and

      (4)     It has product liability insurance in effect which names the other as an additional insured.

(b)     Great Notions warrants that the products it provides to Tacony do not violate any existing intellectual property rights of a third-party and agrees to indemnify Tacony against all reasonable out-of-pocket costs and expenses incurred through claims of third parties against Tacony based on claims of such infringement. If any such claim is made, Tacony shall immediately notify Great Notions of same. 22

---

Great Notions warrants that the products are compatible with Amazing Design Suite products (and/or any other make of products with respect to which it may be designed to be used) and free from defects in material and workmanship and will pass without objection in the trade.

11. **EXPIRATION OR TERMINATION.**

    (a)    **Limited Sell-Off Rights.** After the expiration or termination of this Agreement, Tacony may sell, ship, market and distribute its remaining inventory of Design Disks and RAM Cards, on a non-exclusive basis. Tacony's final statement and payment shall be received by Great Notions within sixty (60) calendar days after the expiration or termination of the Term. Upon expiration or termination of this Agreement, Great Notions shall have the right, but not the obligation; to repurchase any of Tacony's remaining inventory of Design Disks and RAM Cards at the price originally paid by Tacony for such inventory. Once repurchased by Great Notions, all reclaimed inventory can be freely resold or reused by Great Notions with the understanding that the Parties will split the expense for having Tacony's trademarked names removed from the reclaimed inventory.

    (b)    **Inventory and Verification.** If requested by Great Notions, Tacony shall deliver to Great Notions a written report indicating the number and description of Design Disks and RAM Cards it had on hand as of the date of expiration, termination, or request for a statement, as the case may be. Great Notions may conduct a physical inventory or inspection in order to verify such report.

12. **SALES TO LEADING NORTH AMERICAN RETAILERS.**

    (a)    The Parties desire to sell Great Notion's embroidery designs to leading North American home sewing retailers, such as Jo-Ann Stores, Inc., d/b/a, Jo-Ann's Fabrics and Crafts, Hobby Lobby, Fabric Bonanza, Wal-Mart, and Hancock Fabrics. Tacony will develop a plan for pursuing such business with Great Notions' input as to how to best obtain such business, including, but not limited to, Great Notions' participation in sales calls, as desired.

    (b)    In the event that Tacony has not secured contracts for the distribution of Great Notions's embroidery designs with any leading North American home sewing retail outlet within six (6) months from the effective date of this Agreement, then Great Notions, upon notice to Tacony, shall be permitted to contact any such home sewing retail outlet that is not then under contract with Tacony and schedule sales calls with Tacony and Great Notions' representative(s) in an effort to obtain agreement for Tacony to distribute Great Notions's embroidery designs through such retailer..

13. **NOTICES.**

*23*

---

**Distribution Agreement**                                             **Page 10 of 18**

Case 8:04-cv-00353-SPF-MLG Document 06/26/20 Page 26 of 71

Except as otherwise specifically provided herein, all notices, requests, demands, and or other communications required or permitted under this Agreement shall be in writing and mailed by United States certified mail return receipt requested, or delivered to the recipient Party by hand delivery or facsimile, as follows:

**(a)** **If to Tacony:**

>   Tacony Corporation
>   Attention: H. William Hinderer, III.
>   1760 Gilsinn Lane
>   Fenton, MO 63026
>   Facsimile: (314) 349-2333
>   E-mail: b.hinderer@tacony.com

**(b)** **If to Great Notions:**

>   Great Notions
>   Attention: Gary Gardner
>   2751 Electronic Lane
>   Dallas, Texas 75220
>   Facsimile: (214) 352-7249
>   E-mail: ggardner@mail.greatnotions.com

Either Party may from time to time change its address for the purpose of notices to that Party by delivering to the other Party a similar notice specifying the new address and the effective date for the change of address. Formal notices, requests, and demands may not be delivered via e-mail transmission, although a courtesy informational copy may be sent by that manner.

14. **NOTICE TO GREAT NOTIONS REGARDING COMPETING SOFTWARE.** If Tacony chooses to introduce software which directly competes with the Amazing Designs Products from Great Notions, other than software from one of the manufacturers of embroidery machines that Tacony distributes or software already in distribution for the home market or otherwise known to Great Notions, Tacony will notify Great Notions of its intent to sell such software. Tacony will not sell such software until ninety (90) days from the date of such notice or until Great Notions introduces a competing product, whichever is sooner.

15. **ACCESS TO RECORDS.** At reasonable times and upon reasonable notice, Great Notions shall have the right to examine the books and records of Tacony to confirm that its advertising expenses in a calendar year, for purposes of confirming that its advertising expenses have exceeded one hundred eighty thousand American dollars ($180,000.00/US), as described in Section 3(b) above. Tacony shall have the right to examine the books and records of Great Notions through calendar year 2004 to confirm compliance with Section 6, above.

16. **INDEPENDENT CONTRACTOR.**

_24_

---

**Distribution Agreement**                                    Page 11 of 18

affiliate or employee of Great Notions. No fiduciary relationship exists between the parties. Neither Party shall be liable for any debts, accounts, obligations or other liabilities of the other Party, its agents or employees. Neither Party shall have authority to obligate or bind the other Party in any manner except as expressly authorized hereunder.

17. **GOVERNING LAW.**

This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas applicable to contracts made and to be performed therein.

18. **SEVERABILITY; HEADINGS.**

Each term and provision of this Agreement constitutes a separate and distinct undertaking, covenant, term or provision hereof. In the event that any term or provision of this Agreement shall be determined to be unenforceable, invalid or illegal in any respect, such unenforceability, invalidity or illegality shall not affect any other term or provision of this Agreement, but this Agreement shall be construed as if such unenforceable, invalid or illegal term or provision had never been contained herein. Moreover, if any term or provision of this Agreement shall for any reason be held to be excessively broad as to time, duration, activity or subject, it shall be construed, by limiting and reducing it, so as to be enforceable to the extent permitted under applicable law as it shall then exist. Headings of paragraphs herein are for convenience only and are without substantive significance

19. **ENTIRE AGREEMENT.**

This Agreement embodies the entire agreement and understanding among the parties hereto with respect to the subject matter of this Agreement and supersedes all prior agreements, commitments, arrangements, negotiations or understandings, whether oral or written, between the parties with respect thereto. There are no agreements, covenants, undertakings, representations or warranties with respect to the subject matter of this Agreement other than those expressly set forth or referred to herein.

20. **FORCE MAJEURE.**

Neither Tacony nor Great Notions shall be responsible for or liable for failure to perform any part of this Agreement, directly or indirectly resulting from accidents or contingencies beyond their control.

21. **AMENDMENT; WAIVER.**

This Agreement may not be modified or supplemented except by written agreement signed by authorized representatives of both parties hereto.

*25*

Each Party hereby acknowledges and agrees that five percent (5%) of the price paid to it pursuant to this Agreement represents at least part of the specific consideration paid by the other Party for all indemnifications from the other Party which are provided under the terms of this Agreement, as well as this Section.

(a)   **Indemnification.**    To the fullest extent permitted by law, each Party does hereby assume liability for, and does hereby agree to fully indemnify, protect, save, hold harmless and defend the other Party, its respective subsidiaries and affiliates, and its respective directors, officers, agents, partners, employees, successors and assigns of each of them, from and against any and all suits, judgements, expenses, losses, costs, damages, injuries, obligations, liabilities, claims, demands, royalties, penalties, interest and causes of action, including without limitation reasonable attorneys' fees (collectively, the "Damages"), arising out of, resulting from or related to third-party claims for bodily injury or property damage (including without limitation claims filed directly against the indemnified Party by employees, consultants or other persons acting under the direction of the indemnifying Party or its Subcontractors), associated with the design, procurement, packaging, distribution, and/or sale of the products which are the subject of this Agreement, to the extent caused or contributed to or claimed to be caused or contributed to by the indemnifying Party's tort negligence or liability, including strict liability, in the performance of the work described in this Agreement, or by any breach by either Party of the Agreement.

(b)   **Comparative Negligence and Consequential Damages**

In the event that a claim, liability, loss, damage, cost, and/or expense is caused by an action for which Tacony and Great Notions are jointly liable, the theory of comparative negligence shall be applied to determine the liabilities of each Party. In no event shall either Party be liable to the other for payment of special, punitive, exemplary, consequential, incidental, or indirect damages, no matter how those costs or expenses are characterized or described.

(c)   **Limitation of Liability**

Tacony agrees that the liability of Great Notions, its parent corporation, affiliates, agents, employees, subcontractors, and suppliers, if any, with respect to any and all claims by Tacony arising out of performance or nonperformance of obligations in connection with the this Agreement, or rendition of other services in connection with the Agreement, whether based on contract, warranty, tort (including negligence), strict liability, or otherwise, shall not exceed, in the aggregate, the total price paid to Great Notions, as provided in this Agreement. Tacony further agrees that Great Notions shall not be liable to Tacony for any interest, loss of anticipated revenues, earnings, profits, increased expense of operations, loss by reason of shutdown or non-operation due to late completion of

*26*

(d)     The above provisions relating to Indemnification, Comparative Negligence, Consequential Damages, and Limitation of Liability shall survive the termination of this Agreement.

## !3.     COMPUTER VIRUS DILIGENCE

It is anticipated that the Parties will share electronic files with one another during the course of this Agreement. Both Parties will check for viruses in all data, prior to sending an electronic file or message to the other Party and they will delete or treat each virus so detected. Each Party shall scan for viruses prior to opening electronic files received from the other Party. Each Party will use its best efforts to avoid infecting the other Party with any computer virus, worm, Trojan Horse, and/or other types of malicious files and programs. Whenever a Party detects a virus in an electronic file or message received from the other Party, it will immediately inform the other Party of that fact, so that the originating Party can take steps to treat and eradicate the virus from its system before sending additional electronic files or messages. In the event that a Party receives a computer virus from some third party that then automatically spreads itself electronically to the other Party, the Parties shall work together cooperatively to eradicate the virus. If the Parties share a computer virus, the Party who first eradicates or overcomes the virus will document the steps it took to eradicate it and then share that information with the other Party.

## !4.     CONFIDENTIAL AND PROPRIETARY INFORMATION

(a)     **Non-Disclosure**.  Neither Party shall disclose to third parties any proprietary information regarding the business affairs, finances, technology or processes of the other Party which is designated as confidential by such other Party without first obtaining the express written consent of the other Party. This Section shall not apply to information independently developed by the Party seeking to disclose the same prior to receipt from the other, that is now or hereafter becomes a part of the public domain other than by reason of publication by the Party wishing to disclose, or that corresponds in substance to information heretofore or hereafter furnished by third parties without restriction on disclosure. Each Party agrees to release, indemnify and hold harmless the other Party, its employees, agents, officers, directors, affiliates, and all successors and assigns, from any and all liability arising from the first Party's use of confidential or proprietary information protected under this Section. Notwithstanding the foregoing, Tacony and Great Notions may disclose information otherwise covered by this Section to lenders; provided that, they have agreed to non-disclosure provisions similar to the foregoing.

*27*

(b) **Disclosure Required in Legal Action.** If a Party is required by Law to disclose information that is otherwise required to be maintained in confidence pursuant to this Section 24, or if a Party is required to disclose information in connection with proceedings involving such Party, then the Party may make disclosure notwithstanding the provisions of this Section 24; provided, however, that the Party making the disclosure shall immediately notify the other Party of the requirement and the terms thereof prior to the submission. The Party disclosing such information shall use its best efforts to obtain proprietary or confidential treatment of such information by the third party to whom the information is disclosed, and will, to the extent such remedies are available, seek protective orders limiting the dissemination and use of the information. This Section 24 does not diminish any right of either Party or impose an obligation upon any Party, to challenge any Law requiring the disclosure.

(c) **Continuation of Obligation.** The obligations of the Parties pursuant to this Section 24 shall remain in full force and effect for a period of three (3) years after expiration of the Agreement.

## 25. NON-WAIVER PROVISION

No failure or failures to enforce any term or condition of this Agreement by either Party shall constitute a waiver of such term or condition, nor shall any course of dealing of either Party or failure of a Party to enforce any term or condition affect any such term or condition in any way or the right of the Parties at any time to avail themselves of any remedies.

## 26. DISPUTE RESOLUTION

(a) **Executive Resolution.** Tacony and Great Notions desire that this Agreement operate between them fairly and reasonably. If during the term of this Agreement a dispute arises between Tacony and Great Notions, or one Party perceives the other as acting unfairly or unreasonably, or a question of interpretation arises hereunder, then Tacony's representative and Great Notion's representative shall promptly confer and exert their best efforts in good faith to reach a reasonable and equitable resolution of the issue. If such representatives are unable to resolve the issue within ten (10) business days from the date one Party has requested a conference between Tacony's representative and Great Notion's representative, the matter shall be referred within five (5) business days of the lapse of the aforementioned ten (10) business days to the chief executive officer of each Party for resolution. Either Party shall not seek other means of resolving any dispute arising in connection with this Agreement until the Parties' chief executive officers, who shall be identified by each Party from time to time, have had at least ten (10) business days to resolve the dispute following referral of the dispute to such officers. If the Parties are unable to resolve the dispute within such term, each of the Parties shall have the right to submit the dispute to mediation pursuant to Section 26 (b), herein.

*28*

(b)     **Mediation.** A dispute or controversy arising out of, or relating to this Agreement which is incapable of informal resolution pursuant to the terms of Section 26 (a), above, shall be referred to mediation in Dallas, Texas. The costs of the mediation shall be borne by the Party incurring the cost. The cost of the mediator(s) and the facilities required for mediation shall be borne one-half (1/2) each by the Parties.

(c)     **Litigation.** In the event that mediation to resolve the dispute between the Parties is unsuccessful, then an action shall be brought in a court of competent jurisdiction, with Great Notions agreeing to bring any action against Tacony in the State of Missouri and Tacony agreeing to bring any action against Great Notions in the State of Texas, both Parties agree to submit to the personal jurisdiction of the applicable federal or state court for purposes of the final resolution by trial of all unresolved disputes. Both Parties agree to accept service of process in any such proceeding by certified mail, return receipt requested, directed to the address set out in Section 13, herein.

(d)     **Continuation of Work.** Each Party shall continue its performance of the Work described in this Agreement on a timely basis and to make payments of any undisputed amounts on a timely basis, in accordance with the terms of this Agreement, during any dispute or controversy which may arise between Tacony and Great Notions in connection with this Agreement.

(e)     **Initiation of Litigation to Avoid Limitations.** Notwithstanding the foregoing, a Party may initiate formal proceedings with regard to any dispute in order to avoid the expiration of any applicable statute of limitations period.

(f)     **Attorneys' Fees.** In any dispute arising under this Agreement, each Party shall bear its own attorney's fees, expenses and court costs.

(g)     **Waiver of Jury Trial. TACONY AND GREAT NOTIONS HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN), PRODUCT, AND/OR ACTIONS OF TACONY OR GREAT NOTIONS. TACONY AND GREAT NOTIONS HEREBY SPECIFICALLY ACKNOWLEDGE AND AGREE THAT EACH HAS RECEIVED FULL AND SUFFICIENT CONSIDERATION FOR THIS PROVISION (AND EACH OTHER PROVISION OF THIS CONSENT AND THE AGREEMENT) AND THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR EACH ENTERING INTO THIS AGREEMENT.**

*29*

(a)    Each Party acknowledges, and agrees to comply with, the other Party's commitment that all business activities be conducted ethically, with integrity, and in full compliance with both the letter and the spirit of the laws and regulations applicable to those activities. This commitment applies, but is not limited, to the award of contracts/subcontracts with vendors and/or retail establishments on an impartial/competitive basis, personal business conduct, internal control systems, the giving/receiving of gifts, and correct documentation and registration of financial accounts. No employee of either Party is authorized to ask the other Party to operate on its behalf in an illegal manner or in contrast with the other Party's ethical business-conduct policies. Should either Party ever receive, directly or indirectly from any representative of the other Party, a request that the receiving Party believes is contrary to the provisions of this Section, the receiving Party shall immediately notify the other Party's General Counsel.

(b)    Without limiting the generality of the foregoing or the effect of any other provision of the Agreement, and to the extent either Party performs any of the work or obtains any of the goods/services required under the Agreement in or from a foreign country:

    (1)    Each Party represents and warrants that it is familiar with the Foreign Corrupt Practices Act, as amended, ("the FCPA"). Each Party further represents that, in particular, it is familiar with the prohibitions of the FCPA against paying or giving anything of value, either directly or indirectly, to foreign officials, candidates or political parties for the purpose of securing any improper advantage for a company, including assisting a company in obtaining or retaining business.

    (2)    Neither Party shall make any offer, payment, promise to pay, gift, or promise to give monies or anything of value; nor authorize any such offer, payment, promise to pay, gift, or promise to give by anyone acting for or on behalf of Tacony or Great Notions; to any government official, any political party or official thereof, any candidate for political office, any official of a public international organization, or any other person that is contrary to the provisions of the FCPA, as amended from time to time.

    (3)    Each Party acknowledges that the representations and warranties provided in this Section 27 are material to each Party entering into this Agreement. Each Party may terminate the Agreement at any time, without any liability or obligations to the other Party, if the terminating Party believes, in good faith, that the other Party has violated any provisions of this Section. Any action by either Party which would or might constitute a violation of the FCPA, as amended, or a request for such action from or by a representative of the other Party, shall result in immediate termination of the Agreement without further liability or obligation of the terminating Party.

*30*

---

Neither Party shall assign this contract without the prior written consent of the other, which consent shall not be unreasonably withheld or delayed.

29. **INTERNATIONAL SALES AND MARKETING.**

Great Notions reserves unto itself the sole right and opportunity to expand the sale and distribution of its embroidery design products outside North America, Notwithstanding the foregoing, Great Notions acknowledges that Tacony has existing agreements with Sew Simple and Franklins to distribute Amazing Designs Products in Australia and Europe, respectively and nothing in this Agreement is intended to alter those agreements. This reservation includes the right to sell designs, Design Disks and RAM Cards which are otherwise made available to Tacony for sale to the North American market. Likewise, Great Notions reserves the right to sell internationally any embroidery sewing machine that it manufacturers, whether for the retail market, the resale market, or directly to home sewing users.

**In Witness Whereof,** the Parties have executed this Agreement on the date first written above.

**Action Tapes, Inc. d/b/a Great Notions**

By: _____

Name:  Marvin Gardner

Title:  Executive Vice-President

**Tacony Corporation**

By: _____

Name:  H. William Hinderer, III

Title:  Executive Vice President

*31*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

# Exhibit B
# (16 Pages)

23
24
25
26
27
28

## MEDIATION SETTLEMENT AGREEMENT

THIS MEDIATION SETTLEMENT AGREEMENT (the "Agreement") is made and entered into by and between Tacony Corporation ("Tacony"), a Missouri Corporation, and Action Tapes, Inc. d/b/a Great Notions ("Great Notions"), a Texas corporation.   Tacony and Great Notions are hereinafter sometimes collectively referred to as the "Parties."

## RECITALS

WHEREAS, Tacony and Great Notions entered into a written Distribution Agreement, dated December 20, 2001 (the "Distribution Agreement");

WHEREAS, certain disputes have arisen between Tacony and Great Notions about each others' performance under the Distribution Agreement and the interpretation of certain language in the Distribution Agreement;

WHEREAS, pursuant to the dispute resolution process under the Distribution Agreement, the Parties participated in a mediation in Dallas, Texas, on December 13, 2005 (the "Mediation");

WHEREAS, as a result of the Mediation the Parties have agreed to compromise and settle their disputes, without admitting any liability, and memorialize their agreement in this Mediation Settlement Agreement; and,

WHEREAS, all of the recitals contained herein are true and correct and made a part hereof.

FOR AND IN CONSIDERATION of the premises, mutual promises, covenants, conditions and obligations contained herein, and other good and

**Exhibit "B" to Third Party Complaint (16 Pages)**

valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1.    The Distribution Agreement shall automatically expire at Midnight on December 31, 2005.

2.    The Parties' May 2, 2005 Email Agreement (hereinafter so-called) regarding Pulse shall automatically expire at Midnight on December 31, 2005.

3.    All claims for the payment of money under the Distribution Agreement by each Party against the other Party shall be and is hereby compromised, settled, released, waived and discharged, including but not limited to: (a) Tacony's claims against Great Notions for: (i) $45,000 for past due advertising; (ii) all other claims for past, present, and/or future advertising; (iii) all claims for past, present, and/or future charge-backs; and, (iv) all claims past, present, and/or future gross margin profits, including Tacony's claim for approximately $309,000.00 for gross margin profits; and, (b) Great Notion's claims against Tacony for: (i) all past, present, and/or future purchases from Pulse; (ii) all past, present, and/or future sales of Interactives; and, (iii) all past, present, and/or future claims related to the prices of CDs. Provided, however, that the releases in this paragraph exclude any accounts receivables generated by Tacony during the regular course of business.

4.    Great Notions agrees to continue to provide technical support for products sold to Tacony for a maximum of twelve (12) months from January 1, 2006 (the "Effective Date" of this Agreement).   Great Notions shall charge Tacony its actual cost of compensation for the employees providing such

technical support, plus twenty-five percent (25%) for such technical support. To the extent of the same employee(s) provide(s) technical support to non-Tacony business, Tacony shall only be charged a pro-rated portion of that employee's cost of compensation. In the event that Tacony desires to terminate the technical support provided by Great Notions to Tacony, prior to twelve (12) months from the effective Date of this Agreement, then Tacony shall provide thirty (30) days written notice of termination to Great Notions.

     5.    Great Notions will develop pricing with quantity terms to offer Tacony that are as good as the pricing terms it offers to any third party in the embroidery industry. Payment for any purchases by Tacony shall be ▮▮▮ discount, net thirty (30) days. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The minimum prices set forth within this paragraph are for volume quantity purchases. Purchases for lower quantities will be subject to higher prices. Volumes to qualify for minimum volume pricing will be established by Great Notions at a later date.

     6.    Great Notions agrees to accept the return of obsolete merchandise from Tacony through Midnight on January 31, 2006, but not after that date. Provided, however, that all merchandise returned from the Effective Date of this Agreement until January 31, 2006, shall not be in any greater quantity than that which results from the ordinary course of business up to a total of Five Thousand and no/00 Dollars ($5,000.00).

7.    Tacony does now and forever hereby compromise, settle, release and discharge Great Notions and its respective predecessors, servants, employees, shareholders, agents, officers, directors, associates, partners, members, attorneys, legal representatives, insurers, successors and assigns, any former servants, employees, agents, officers, directors, shareholders, associates, partners, members, attorneys, legal representatives, and any parent, subsidiary, affiliated or related business entities, and their insurers and sureties (the "Party of the First Part"), of and from any and all debts, claims, demands, causes of action, matters, accounts, notes, covenant, contracts, agreements, promises, liabilities, damages, losses, costs and expenses whatsoever, known or unknown, accrued or unaccrued, suspected or unsuspected, in law or in equity, whether having arisen or hereafter to arise against the Party of the First Part and their respective predecessors, servants, employees, shareholders, agents, officers, directors, associates, partners, members, attorneys, legal representatives, insurers, successors and assigns, any former servants, employees, agents, officers, directors, shareholders, associates, partners, members, attorneys, legal representatives, and any parent, subsidiary, affiliated or related business entities, and their insurers and sureties from any event occurring contemporaneously with or prior to the Effective Date of this Agreement, including but not limited to any claims actually asserted or which could have been asserted against the Party of the First Part to date. Notwithstanding the foregoing or anything else in this Agreement to the contrary, Tacony does not release any rights or remedies created by this Agreement.

35

8.    Great Notions does now and forever hereby compromises, settles, releases and discharges Tacony and its respective predecessors, servants, employees, shareholders, agents, officers, directors, associates, partners, members, attorneys, legal representatives, insurers, successors and assigns, any former servants, employees, agents, officers, directors, shareholders, associates, partners, members, attorneys, legal representatives, and any parent, subsidiary, affiliated or related business entities, and their insurers and sureties (the "Party of the Second Part"), of and from any and all debts, claims, demands, causes of action, matters, accounts, notes, covenant, contracts, agreements, promises, liabilities, damages, losses, costs and expenses whatsoever, known or unknown, accrued or unaccrued, suspected or unsuspected, in law or in equity, whether having arisen or hereafter to arise against the Party of the Second Part and their respective predecessors, servants, employees, shareholders, agents, officers, directors, associates, partners, members, attorneys, legal representatives, insurers, successors and assigns, any former servants, employees, agents, officers, directors, shareholders, associates, partners, members, attorneys, legal representatives, and any parent, subsidiary, affiliated or related business entities, and their insurers and sureties from any event *occurring contemporaneously with or prior to the Effective Date of this Agreement*, including but not limited to any claims actually asserted or which could have been asserted against the Party of the Second Part to date. Notwithstanding the foregoing or anything else in this Agreement to the contrary, Great Notions does not release any rights or remedies created by this

36

Agreement.

9. WARRANTIES AND REPRESENTATIONS.

(a)   Great Notions represents and warrants to Tacony and Tacony represents and warrants to Great Notions as follows:

(1)   It has full power and authority to execute and deliver this Agreement and to perform the transactions contemplated hereby;

(2)   The making of this Agreement does not violate or conflict with any agreements, rights or obligations binding on or affecting such Party;

(3)   This Agreement has been duly and properly authorized, executed and delivered by such Party and constitutes the legal, valid and binding obligation of such Party enforceable in accordance with its terms; and,

(4)   It has product liability insurance in effect which names the other as an additional insured.

(b)  Great Notions warrants that the products it provides to Tacony do not violate any existing intellectual property rights of a third-party and agrees to indemnify Tacony against all reasonable out-of-pocket costs and expenses incurred through claims of third parties against Tacony based on claims of such infringement. If any such claim is made, Tacony shall immediately notify Great Notions of same.

(c)   Great Notions further warrants that the products it provides are compatible with Amazing Design Suite products (and/or any other make of products with respect to which it may be designed to be used) and free from defects in material and workmanship and will pass without objection in the trade.

Mediation Settlement Agreement
Page 6 of 16
January 9, 2006

37

10.    NANCY ZIEMAN EMBROIDERY DESIGNS.

(a) Tacony acknowledges:    (1) that one certain Copyright License Agreement, ("Agreement"), dated October 30, 2002, by and between Nancy Zieman and Action Tapes, Inc. d/b/a Great Notions; (2) that the Agreement is a valid, binding and enforceable Agreement; and, (3) that Great Notions can sell Nancy Zieman embroidery designs, on any medium, to any person or entity, other than Tacony, including but not limited to any consumer, retailer and/or dealer at any time, from and after January 6, 2006; and,

(b) Great Notions agrees to give Tacony ninety (90) days written notice of its intent to sell the aforesaid Nancy Zieman embroidery designs to any person or entity other than Tacony.

11.  EXPIRATION OR TERMINATION.

(a)  Limited Sell—Off Rights. After January 31, 2006, Tacony may sell, ship, market and distribute its remaining inventory of Design Disks and RAM Cards, on a non-exclusive basis. Tacony's final statement under the Distribution Agreement and payment shall be received by Great Notions approximately sixty (60) days after January 31, 2006. Great Notions shall have the right, but not the obligation; to repurchase any of Tacony's remaining inventory of Design Disks and RAM Cards at the price originally paid by Tacony for such inventory. Once repurchased by Great Notions, all reclaimed inventory can be freely resold or reused by Great Notions with the understanding that the Parties will split the expense for having Tacony's trademarked names removed from the reclaimed inventory.

38

(b)  Inventory and Verification. If requested by Great Notions, Tacony shall deliver to Great Notions a written report indicating the number and description of Design Disks and RAM Cards it had on hand as of the date of expiration, termination, or request for a statement, as the case may be. Great Notions may conduct a physical inventory or inspection in order to verify such report.

12.    If any provision of this Agreement or its application to any person or circumstance is held invalid, the invalidity will not affect other provisions or applications of this Agreement that can be given effect without the invalid provision or application.

13.    The Parties further agree that this Agreement constitutes a valid, binding, and enforceable obligation of that Party, its terms are lawful and fair, and it constitutes an equitable compromise and settlement of their disputes and differences.

14.    This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas applicable to contracts made and to be performed therein.

15.    This Agreement embodies the entire agreement and understanding among the parties hereto with respect to the subject matter of this Agreement and supersedes all prior agreements, commitments, arrangements, negotiations or understandings, whether oral or written, between the parties with respect to the subject matter of this Agreement.

39

16.    (a)    Indemnification. To the fullest extent permitted by law, each Party does hereby assume liability for, and does hereby agree to fully indemnify, protect, save, hold harmless and defend the other Party, its respective subsidiaries and affiliates, and its respective directors, officers, agents, partners, employees, successors and assigns of each of them, from and against any and all suits, judgments, expenses, losses, costs, damages, injuries, obligations, liabilities, claims, demands, royalties, penalties, interest and causes of action, including without limitation reasonable attorneys' fees (collectively, the "Damages"), arising out of; resulting from or related to third-party claims for damages (including without limitation claims filed directly against the indemnified Party by employees, consultants or other persons acting under the direction of the indemnifying Party or its Subcontractors), associated with the design, procurement, packaging, distribution, and/or sale of the products which are the subject of the Distribution Agreement, to the extent caused or contributed to or claimed to be caused or contributed to by the indemnifying Party's tort, negligence or liability, including strict liability, in the performance of the work described in the Distribution Agreement, or by any breach by either Party of the Distribution Agreement.

(b)    Comparative Negligence and Consequential Damages.    In the event that a claim, liability, loss, damage, cost, and/or expense is caused by an action for which Tacony and Great Notions are jointly liable, the theory of comparative negligence shall be applied to determine the liabilities of each Party. In no event shall either Party be liable to the other for payment of special,

punitive, exemplary, consequential, incidental, or indirect damages, no matter how those costs or expenses are characterized or described.

(c)  Limitation of Liability. Tacony agrees that the liability of Great Notions, its parent corporation, affiliates, agents, employees, subcontractors, and suppliers, if any, with respect to any and all claims by Tacony arising out of performance or nonperformance of obligations in connection with the Distribution Agreement, or rendition of other services in connection with the Distribution Agreement, whether based on contract, warranty, tort (including negligence), strict liability, or otherwise, shall not exceed, in the aggregate, the total price paid to Great Notions, as provided in the Distribution Agreement.  Tacony further agrees that Great Notions shall not be liable to Tacony for any interest, loss of anticipated revenues, earnings, profits, increased expense of operations, loss by reason of shutdown or non-operation due to late completion of new Design Disks or RAM cards, or otherwise, or for any special, indirect, incidental or consequential damages of any nature.

(d)  The above provisions in paragraph 16 relating to Indemnification, Comparative Negligence, Consequential Damages, and Limitation of Liability shall survive the termination of this Agreement for one (1) year.

17.    (a) Non-Disclosure. Neither Party shall disclose to third parties any proprietary information regarding the business affairs, finances, technology or processes of the other Party which is designated as confidential by such other Party without first obtaining the express written consent of the other Party. This Section shall not apply to information independently developed by the Party

*41*

seeking to disclose the same prior to receipt from the other, that is now or hereafter becomes a part of the public domain other than by reason of publication by the Party wishing to disclose, or that corresponds in substance to information heretofore or hereafter furnished by third parties without restriction on disclosure. Each Party agrees to release, indemnify and hold harmless the other Party, its employees, agents, officers, directors, affiliates, and all successors and assigns, from any and all liability arising from the first Party's use of confidential or proprietary information protected under this Section. Notwithstanding the foregoing, Tacony and Great Notions may disclose information otherwise covered by this Section to lenders; provided that, they have agreed to non-disclosure provisions similar to the foregoing.

(b) Disclosure Required in Legal Action. If a Party is required by Law to disclose information that is otherwise required to be maintained in confidence pursuant to this Paragraph 17, or if a Party is required to disclose information in connection with proceedings involving such Party, then the Party may make disclosure notwithstanding the provisions of this Paragraph 17; provided, however, that the Party making the disclosure shall immediately notify the other Party of the requirement and the terms thereof prior to the submission. The Party disclosing such information shall use its best efforts to obtain proprietary or confidential treatment of such information by the third party to whom the information is disclosed, and will, to the extent such remedies are available, seek protective orders limiting the dissemination and use of the information. This

*42*

Paragraph 17 does not diminish any right of either Party or impose an obligation upon any Party, to challenge any Law requiring the disclosure.

18.    (a) *Dispute Resolution.* Tacony and Great Notions desire that this Agreement operate between them fairly and reasonably. If during the term of this Agreement a dispute arises between Tacony and Great Notions, or one Party perceives the other as acting unfairly or unreasonably, or a question of interpretation arises hereunder, then Tacony's representative and Great Notion's representative shall promptly confer and exert their best efforts in good faith to reach a reasonable and equitable resolution of the issue. If such representatives are unable to resolve the issue within ten (10) business days from the date one Party has requested a conference between Tacony's representative and Great Notion's representative, the matter shall be referred within five (5) business days of the lapse of the aforementioned ten (10) business days to the chief executive officer of each Party for resolution. Either Party shall not seek other means of resolving any dispute arising in connection with this Agreement until the Parties' chief executive officers, who shall be identified by each Party from time to time, have had at least ten (10) business days to resolve the dispute following referral of the dispute to such officers. If the Parties are unable to resolve the dispute within such term, each of the Parties shall have the right to submit the dispute to mediation pursuant to Paragraph 18 (a), herein.

(b) *Mediation.* Any dispute or controversy arising out of or relating to this Agreement which is incapable of informal resolution pursuant to the terms of Paragraph 18 (a), above, shall be referred to mediation in Dallas, Texas. The

*43*

costs of the mediation shall be borne by the Party incurring the cost. The cost of the mediator(s) and the facilities required for mediation shall be borne one-half (1/2) each by the Parties.

(c)  Litigation. In the event that mediation to resolve the dispute between the Parties is unsuccessful, then an action shall be brought in a court of competent jurisdiction, with Great Notions agreeing to bring any action against Tacony in the State of Missouri and Tacony agreeing to bring any action against Great Notions in the State of Texas, both Parties agree to submit to the personal jurisdiction of the applicable federal or state court for purposes of the final resolution by trial of all unresolved disputes. Both Parties agree to accept service of process in any such proceeding by certified mail, return receipt requested.

(d)   Initiation of Litigation to Avoid Limitations. Notwithstanding the foregoing, a Party may initiate formal proceedings with regard to any dispute in order to avoid the expiration of any applicable statute of limitations period.

19.   Notwithstanding anything contained herein to the contrary, the Parties acknowledge and agree that:   (a) this Agreement is not a "supply," "demand," or "requirements" contract; (b)  other than as specifically set forth in this Agreement, there are no obligations for the Parties to do business with each other; and (c) from and after January 1, 2006, the Parties may or may not buy or sell products, goods, merchandise or anything else at their respective sole discretion.

20.   Each Party represents that this Agreement is the product of negotiations among the Parties. All parties acting through their attorneys have

*44*

participated in the drafting of this Agreement. Therefore, no Party to this Agreement shall be charged with having promulgated this Agreement or have this document construed for or against a Party under the rules of contract construction.

21.    Unless otherwise specified herein, all of the obligations of the Parties, except for the mutual releases in paragraphs 7 and 8, automatically expire one (1) year from the Effective Date of this Agreement.

22.    The Parties further agree that this Agreement may be executed in multiple counterparts, each of which shall constitute an original.

23.    All Parties agree to execute or have their attorneys execute all additional documents and take all additional actions necessary to effectuate the intent of this Agreement.

45



01/09/06   18:12 FAX 9727882667          FRIEDMAN FEIGER                                    ☒016

JAN-09-2006   18:15          TACONY                              6363492333     P.15

SIGNED and entered into this ____ day of January, 2006.

ACTION TAPES, INC. d/b/a GREAT [illegible]

By: _____
    Mr. Gary Gardner, President


STATE OF TEXAS

COUNTY OF DALLAS

On this 9th day of January, 2006, before me, the undersigned notary public, personally appeared, Mr. [illegible], known to me to be the person whose name is subscribed to the [illegible] instrument and acknowledged to me that he executed the same for the [illegible] consideration expressed therein.

_____
[illegible] Public in and
[illegible] State of Texas

CYNTHIA C. NA[illegible]
Notary Public, State of [illegible]
My Commission Expires [illegible]

Mediation Settlement Agreement
Page 15 of 16
January 9, 2006

46

**TACONY CORPORATION**

By: _____

H. William Hinderer, III


STATE OF MISSOURI          '

                           '

COUNTY OF ST. LOUIS        '

On this _9ᵗʰ_ day of January, 2006, before me, the undersigned notary public, personally appeared, Mr. H. William Hinderer, III, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration expressed therein.

```
" NOTARY SEAL "
Kristin Tacony Humes , Notary Public
St. Louis County, State of Missouri
My Commission Expires 5/27/2009
Commission Number 05451523
```

_____
Notary Public in and
for the State of Missouri


F:\6326.03\Documents\Mediated Settlement Agreement.doc

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit C
# (3 Pages)

# AGREEMENT

This Agreement is made this 21 day of December, 2006, ("Effective Date") by and between Tacony Corporation ("Tacony") and John Deer ("Deer").

Whereas, Tacony distributes sewing-related products, including embroidery machines under the Baby Lock brand name and embroidery design products under the Designers Gallery and Amazing Designs brand names through a network of authorized dealers; and

Whereas, Deer produces and distributes embroidery design products under the Adorable Ideas brand name; and

Whereas, Tacony and Deer have collaborated in the past to promote the sales of sewing-related products through a number of BabyLock dealer events and both parties desire to continue these successful events for 2007 and beyond in order to sell embroidery machines, digitizing software and designs;

Now, therefore, for good and valuable consideration, the parties agree as follows:

1.  Tacony will assume primary responsibility for the distribution of Deer's Adorable Ideas products with Deer keeping his current end user channels open (i.e., AdorableIdeas, AnntheGran and Embroidery.com). Tacony will package, distribute and market certain Adorable Ideas specialty designs, (i.e. Sparkles, couture, lace, swing 'n sway), and co-brand the products with both Adorable Ideas and Amazing Designs brand names (Ex: John Deer's Adorable Ideas, from Amazing Designs)("Co-Branded Designs"). The parties will mutually agree on the packaging for Co-branded Designs. Notwithstanding the foregoing, the parties acknowledge that Tacony does, and will continue to, distribute products which may compete with Deer's products.
2.  Deer will continue to develop and digitize additional Adorable Ideas products as he currently does, producing approximately 6 new design collections each month. Tacony will select designs for co-branding from those design collections prior to their market introduction. All Adorable Ideas designs, both co-branded and not, can be sold by Tacony through its Amazing Designs channels including web and store kiosk as Adorable Ideas.
3.  Deer will commit to 24 exclusive Baby Lock dealer events in both 2007 and 2008 including VDTA and BLT, promoting the BMP6, Masterworks and Co-Branded Designs. These events will continue to be scheduled by Tacony according to Deer's calendar and will be followed up and planned by Deer. In addition, Deer will continue to sell any current Adorable Ideas products directly at Baby Lock events minus any production and freight costs to Tacony. All current dealer pricing structures will be worked out between Adorable Ideas and the dealer.
4.  For any Co-Branded Designs sold by Tacony, Tacony will pay John Deer 50% of the wholesale price, net of any returns. Tacony will account for the sales of these

**Exhibit "C" to Third Party Complaint (3 Pages)**        48

items and remit Deer's portion of sales to him on a monthly basis. Retail pricing for Co-Branded Designs to be pursuant to Tacony's MAP program. Deer shall have the right, upon reasonable request, to review those records of Tacony necessary to verify the accuracy of the amounts paid to Deer; any such audit will be conducted at Deer's expense and in such manner as to not unreasonably interfere with Tacony's normal operations. If a deficiency is shown by such audit, it shall immediately be paid.

5. Tacony will also distribute any DVD educational videos on non-software specific branded digitizing developed by Deer. Deer can continue to distribute this same software through his current end user channels. The parties anticipate that Deer will develop some educational materials for Tacony software products, including MasterWorks. If and when such development work is undertaken, the parties will agree upon the scope of the work, time for completion and compensation to Deer for it.

6. Tacony and Deer will work together to find additional synergies such as new technology and marketing ideas for future programs and products through joint discussions and planning,i.e., Sew and Tell Road shows, Project oriented dealer lessons.

7. Tacony will have access to Deer's Adorable Ideas designs that are not co-branded, ("Library"), for selling designs on the Amazing Designs and Nancy's Notions web sites, and a retailer store kiosk in development. These designs fall under Item #4 for compensation and accounting purposes and will be paid monthly, net of any credits. Notwithstanding the foregoing, if Library designs are sold at retail at amazingdesigns.com or nancysnotions.com, Deer will receive 50% of the retail price on that sale, net of any credits.

8. Deer will attend and will be permitted to promote his events and Adorable Ideas products at Baby Lock Tech and at the SDTA/VDTA show. Tacony will pay for all show costs (outside of personal expenses) when Deer exhibits in conjunction with a Baby Lock or Amazing Designs corporate booth.

9. During the term of this agreement, Deer agrees not to contract or otherwise work with any competitor of Tacony Corporation to provide similar products or services.

10. Deer warrants that he is the sole owner of the designs which form his Library and the Co-Branded Designs and that the design work contained in them is original. Deer further represents that they do not contain any matter that violates the rights of any third party. Deer agrees to hold Tacony harmless and indemnify it against claims by any third party of infringement. For purposes of seeking copyright protection, Deer is the sole owner of the designs which form his Library and the Co-Branded Designs.

11. Deer may not assign this Agreement. Deer and Tacony are independent contractors and neither has the authority to bind the other.

12.This agreement will continue through 12/31/08 and only renew if the parties agree to its renewal at least 90 days before the end of 2008. Upon expiration, the parties will be allowed to continue to sell Co-Branded Designs in inventory but will cease to produce further Co-Branded Designs. Unless Tacony has failed to pay Deer in



EXHIBIT **C**
PAGE **2of3**

49

accordance with this Agreement, Tacony will be allowed to continue to sell designs from the Library in kiosks, the AD site and NN site so long as Tacony pays Deer for such sales in accordance with paragraph 4 above.

13. The parties acknowledge that Deer has been distributing his designs for some time and is entering this Agreement, in part, due to his hope that Tacony will have greater success in distributing his designs than he might have on his own. If, for any reason, Deer finds that he is experiencing a financial loss as a result of the distribution of his products by Tacony pursuant to this Agreement, the parties will meet to discuss possible changes to the Agreement that may improve the distribution results. If the parties cannot come to mutual agreement of needed changes, either party may dissolve the relationship on 45 days notice, work together to facilitate the transition of the distribution back to Deer by returning any non Co-Branded Products to Deer and work out a plan to sell Co-Branded Products. For 120 days following the termination of this Agreement, Deer will refrain from promoting embroidery machines which compete with the BabyLock brand.

_Kristen Cacaty Nunes_
Tacony Corporation

_12/21/06_
Date

_John Deer_
John Deer

_Dec 21/06_
Date



EXHIBIT __C__
PAGE __3 of 3__

50

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit D
# (13 Pages)

# 39 Accused Action Tapes Designs

Plaintiff Imageline's
IMAGES
with Image Title

**Accused AT Designs**



Image 1:  BDR_S078.WMF




Work 1



Image 2:  LIFLERNG.WMF



Work 2



Image 3:  HUNTING.WMF



Work 3

51

**Exhibit "D" to Third Party Complaint (13 Pages)**



Image 5: GOV224.WMF



Work 5

52



EXHIBIT D
PAGE 2 of 13



Image 7: RACECAR1.WMF



Work 7



Image 9: SOCCER5.WMF



Work 9

EXHIBIT D
PAGE 3 of 13

53



Image 10:  GEN249.WMF



Infringing Work 10



Image 11:  LGART091.WMF



Infringing Work 11



Image 12:  PILOT2.WMF



Infringing Work 12



Image 13:  LGART337.WMF



Infringing Work 13



EXHIBIT **D**
PAGE **4 of 13**

54



Image 14: GEN246.WMF



Infringing Work 14



Image 15: GENTSTRT.WMF



Infringing Work 15



Image 16: FAMLY039.WMF



Infringing Work 16



Image 17: FAMLY016.WMF





Infringing Work 17

EXHIBIT D
PAGE 5 of 13

55



Image 18: LGART336.WMF



Work 18



Image 19: CMPFRCOF.WMF



Work 19





Image 20: BOOK5.WMF

Work 20

EXHIBIT D
PAGE 6 of 13

56



Image 21:  BUS137.WMF



Work 21



Image 22:  CANOE1.WMF



Work 22



Image 23:  CACTUS1.WMF



Work 23





Image 24:  LGART140.WMF

Work 24



EXHIBIT D
PAGE 7 of 13

57



Image 25:  BARN.WMF



Work 25



Image 26:  BCK2SCHL.WMF



Work 26



Image 27:  BASKTBL6.WMF



Work 27



Image 28:  BASBAL7.WMF



Work 28

EXHIBIT D
PAGE 8 of 13

58



Image 29:  VOLYBAL6.WMF



Work 29



Image 30:  PURIMASK.WMF



Work 30



Image 31:  GEN223.WMF



Work 31



Image 32:  MARYBABY.WMF



Work 32

EXHIBIT **D**
PAGE **9 of 13**

59



Image 33:  FBTICKET.WMF



Work 33



Image 34:  CHKRFLAG.WMF



Work 34



Image 35:  GOV170.WMF



Work 35



EXHIBIT **D**
PAGE **10 of 13**

*60*



Image 36:  SKIER.WMF



Work 36



Image 37:  BUS213.WMF



Work 37



Image 38:  CHALK1.WMF



Work 38



EXHIBIT D
PAGE 11 of 13

61



Image 39:  GEN051.WMF



Work 39



Image 40:  TOOLS.WMF



Work 40



EXHIBIT D
PAGE 12 of 13

62



Image 42:  XMASTRE4.WMF



Work 42



Image 43:  SQRDANCE.WMF



Work 43



EXHIBIT D
PAGE 13 of 13

63

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit E
# (1 Page)

# 4 Accused Deer Designs



**Image 4:  BUS097.WMF**



**Work 4**



**Image 6:  BARNWHET.WMF**



**Work 6**



**Image 8:  CLEANTIM.WMF**



**Work 8**



**Image 41:  LEAFDSGN.WMF**



**Work 41**



**Exhibit "E" to Third Party Complaint**

1

2 PROOF OF SERVICE

3

4 STATE OF CALIFORNIA      )
                          ) ss.
COUNTY OF LOS ANGELES )

5

6     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1880 Century Park East, Suite 411, Los Angeles, California 90067.

7

8     On June 26, 2009,  I served the foregoing document(s) described as Third Party Complaint (Impleader) on the interested parties in this action by placing true copies thereof in sealed envelopes addressed as follows:

9

10         Stuart L. Carroll, Esq.
Law Offices of Stuart L. Carroll
1033 Gayley Ave., Suite 107
Los Angeles, CA 90067

11

12 X    BY MAIL:  I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

13

14     BY PERSONAL SERVICE: I delivered such envelope by hand to the offices of the addressee.

15

16     BY FACSIMILE: I personally sent the documents via facsimile machine to the addressee(s)'s facsimile number(s) designated above.

17     STATE Court:

18 X    FEDERAL Court:

19     I declare under penalty of perjury under the laws of the United States and State of California that the above is true and correct.

20     Executed on June 26, 2009 at Los Angeles, California.

21

22 Greg Victoroff

23

24

25

26

27

28

1

**THIRD PARTY COMPLAINT (IMPLEADER)**