Addison K. Adams (State Bar No. 186545)
aadams@richardsonpatel.com
Victor T. Fu (State Bar No. 191744)
vfu@richardsonpatel.com
Deborah Pouratian (State Bar No. 246385)
dpouratian@richardsonpatel.com
RICHARDSON & PATEL LLP
10900 Wilshire Blvd., Suite 500
Los Angeles, California 90024
Telephone: (310) 208-1182
Facsimile: (310) 208-1154

Attorneys for Third Party Defendant
ACTION TAPES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| IMAGELINE, INC., a Virginia corporation; <br><br> Plaintiff, <br><br> v. <br><br> TACONY CORPORATION, a Missouri corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. <br><br>_____ <br><br> TACONY CORPORATION, a Missouri corporation, <br><br> Third Party Plaintiff <br><br> v. <br><br> ACTION TAPES, INC., a Texas corporation; JOHN DEER, an individual; and ROES 1 through 50, inclusive, <br><br> Third Party Defendants. | Case No. SACV 09-0353 CJC MLGx [Before the Honorable Cormac J. Carney] <br><br> **ACTION TAPES, INC.'S REPLY TO TACONY CORPORATION'S OPPOSITION TO MOTION TO DISMISS THIRD PARTY COMPLAINT** <br><br> Date:       October 19, 2009 <br> Time:       1:30 PM <br> Courtroom: 9B |

**ACTION TAPES, INC.'S REPLY TO TACONY CORPORATION'S
OPPOSITION TO MOTION TO DISMISS THIRD PARTY COMPLAINT**

Third Party Defendant Action Tapes, Inc. ("Action Tapes") hereby submits its Reply to the Opposition of Third Party Plaintiff Tacony Corporation ("Tacony") to its Motion to Dismiss the Third Party Complaint ("TPC") for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).

## I.  LEGAL ARGUMENT

Tacony claims that the indemnification and warranty provision set forth in paragraph 9(b) of the Mediation Settlement Agreement ("MSA" or "Settlement Agreement") applies retroactively to products previously sold under the Distribution Agreement, including products containing the 39 designs at issue in the Third Party Complaint.  Opposition, 6:28-7:4 and 8:21-9:8.  Tacony further argues that its interpretation yields an ambiguous agreement and asks this Court to rule as such and to deny Action Tapes' Motion on this ground.  *Id.* at 5:7 and 5:23-24.  However, the Settlement Agreement is not ambiguous, claims relating to the 39 designs at issue <u>are</u> subject to the release contained in paragraph 7, and paragraph 9(b) does not create a new right of action pertaining to products containing those same 39 designs.

## A.     THE MOTION TO DISMISS IS PROCEDURALLY CORRECT.

Tacony argues in its Opposition that, "the facts necessary to establish the affirmative defense of accord and satisfaction must generally come from matters <u>outside of the complaint</u>…" and "affirmative defenses should be raised in responsive pleadings, not…under Rule 12(b)."  Opposition, 6:1-4.  As a preliminary matter, Action Tapes' Motion does not argue "accord and satisfaction."  Second, Tacony's argument fails for the separate reason that Action Tapes has not relied on any matters extraneous to the Third Party Complaint.  As stated in the Motion to Dismiss, "[e]xhibits to the complaint may be considered as part of the complaint for purposes of a Rule 12(b)(6) motion to dismiss."  Motion, 4:26-5:10.  Action Tapes' Motion to Dismiss is properly based on the Third Party Complaint, which includes the exhibits attached thereto.  TPC, ¶¶ 8-9.  Accordingly, a motion to dismiss is the appropriate form of motion to raise the issues presented by the Settlement Agreement.

1

Furthermore, the Opposition erroneously refers to case law in the 5th Circuit regarding the standard of review for a motion to dismiss. Opposition, 4:17-27. However, this Court should first refer to 9th Circuit precedent to determine the standard of review. Motion, 4:9-5:10. Texas State law is utilized solely for purposes of construing the terms of the Settlement Agreement. *Id.* at 5:14-6:6.

**B.**  **THE 39 DESIGNS AT ISSUE WERE SOLD PURSUANT TO THE DISTRIBUTION AGREEMENT – PRIOR TO EXECUTION OF THE SETTLEMENT AGREEMENT.**

Tacony argues in its Opposition that the first recital of the Settlement Agreement "is completely silent as to when any of the 39 Accused AT Designs had been licensed to Tacony" in order to suggest that the products may have been sold or shipped after the date of the Settlement Agreement. Opposition, 14:6-10 (emphasis in original). However, Paragraph 27 of Tacony's Third Party Complaint confirms the 39 designs were allegedly sold pursuant to the Distribution Agreement:

> "In or about 1995 and again in 2001…Tacony entered into exclusive written Distribution Agreements with….Action Tapes whereby Action Tapes granted to Tacony an exclusive license to distribute…various embroidery designs (Ex. 'A'), including the 39 Accused AT Designs (Ex. 'D')."

TPC, ¶ 27 (emphasis added). *See also Id.*, ¶¶ 22-23. Surprisingly, the Opposition quotes language from the moving papers without including the Motion's citation to paragraph 27 of the TPC. Opposition, 14:6-10. Accordingly, there can be no dispute that the 39 designs at issue were allegedly included in products sold pursuant to the Distribution Agreement which was the subject of the Settlement Agreement.

**C.**  **THE PURPOSE OF THE SETTLEMENT AGREEMENT WAS TO SETTLE ALL CLAIMS RELATED TO THE DISTRIBUTION AGREEMENT.**

The Settlement Agreement's stated purpose was to settle the "disputes" between the parties "about each others' performance under the Distribution Agreement and…to

2

**ACTION TAPES, INC.'S REPLY TO TACONY CORPORATION'S OPPOSITION TO MOTION TO DISMISS THIRD PARTY COMPLAINT**

compromise and settle their disputes…in this Mediation Settlement Agreement." MSA, Recitals (emphasis added).  Pursuant thereto, the Settlement Agreement resolves disputes over monetary payments (*Id.* at ¶ 3) and includes broad "release" language to "compromise, settle, release and discharge" Action Tapes "of and from <u>any and all…claims, demands, causes of action, matters, …covenant, contracts, agreements, promises, liabilities, damages, losses, costs and expenses whatsoever, known or unknown, accrued or unaccrued, suspected or unsuspected, in law or in equity, whether having arisen or hereafter to arise</u>." *Id.* at ¶ 7.  As set forth in Action Tapes' Motion, under Texas law a release can be broadly worded and include release of all claims, including claims unknown to exist at the time the release is entered into. *Keck, Mahin & Cate v. National Fire Union Insurance Co.*, 20 S.W.3d 692, 698 (Tex. 2000); *see also, Stinnett v. Colorado Interstate Gas Co.*, 227 F.3d 247, 255 (5th Cir. 2000).  The Settlement Agreement's explicit and lengthy release confirms that Action Tapes has already settled and compromised any potential liability related to the 39 designs allegedly sold pursuant to the Distribution Agreement.  Tacony has no opposing argument other than to point out that the release language does not extend to claims created by the Settlement Agreement itself, and then argue that paragraph 9(b) applies retroactively to the 39 designs allegedly sold under the Distribution Agreement.

**D.**  **<u>PARAGRAPH 9 OF THE SETTLEMENT AGREEMENT RELATES TO THE SETTLEMENT AGREEMENT'S OTHER PURPOSE – GOVERNING ANY FUTURE BUSINESS BETWEEN THE PARTIES.</u>**

The Settlement Agreement looks backwards – settling all past disputes related to the Distribution Agreement – and also forwards – delineating how business between the parties (if any) would be transacted thereafter. *See, e.g.*, MSA, ¶¶ 4, 5, 9, 10, 11, and 19. Tacony's Opposition agrees that certain sections of the Settlement Agreement govern <u>future</u> business dealings between the parties.  Opposition, 17:14 – 18:4.  Indeed, Tacony argues: "Future sales of goods between Action Tapes and Tacony are a <u>dominant factor</u> in the Settlement Agreement, occupying at least three (3) separate sections…" *Id.* at

3

16:9-10 (emphasis added).    Tacony even points to part of paragraph 9 as one of the forward looking sections: "[T]he warranty in ¶9(c) explicitly extends to the future performance of the goods to be sold." *Id.* at 17:14-17 (emphasis added).  As referenced in the moving papers, Action Tapes submits that paragraph 9 is applicable only to future goods to be sold.  Motion, 10:4-11:23.

1. **Paragraph 9 Was Not Altered From Its Counterpart in the Distribution Agreement To Apply to Designs Sold Under the Distribution Agreement.**

Both paragraphs 9 and 16 of the Settlement Agreement are copied verbatim or almost verbatim from the Distribution Agreement (Exhibit A to the TPC).  A comparison of paragraphs 16(a) through 16(d) of the Settlement Agreement to paragraphs 22(a) through 22(d) of the Distribution Agreement reveals that the only change in language is to clarify that the indemnity provided by the Settlement Agreement is related to claims arising under the Distribution Agreement (rather than new claims arising under the Settlement Agreement).  On the other hand, paragraph 9 of the Settlement Agreement (including paragraph 9(b) which forms the basis of a majority of the Opposition) contains no similar modification of the forward looking language found in paragraph 10 of the Distribution Agreement.  Paragraph 10 of the Distribution Agreement applies to products to be distributed under the terms of the Distribution Agreement.  The same language is used in the Settlement Agreement, with the same effect, which is that paragraph 9(b) similarly applies to products to be distributed pursuant to the Settlement Agreement.

The parties altered the indemnification provisions in paragraph 16 to apply retroactively to the products previously sold pursuant to the Distribution Agreement, but the parties did not similarly alter the warranties in paragraph 9 to apply retroactively to the products issued pursuant to the Distribution Agreement.  This confirms that paragraph 9 was meant by the parties to apply to future product sales and was not intended to apply to products sold under the Distribution Agreement.

4

**ACTION TAPES, INC.'S REPLY TO TACONY CORPORATION'S
OPPOSITION TO MOTION TO DISMISS THIRD PARTY COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2.    <u>Paragraph 9's Plain Meaning In the Context of the Settlement Agreement Is That It Applies to the Future.</u>

As stated in the Motion, paragraph 9(b) refers to products it "provides" to Tacony and makes no reference to the past or products provided in the past. MSA, ¶ 9(b).  Not only does paragraph 9 not reference the Distribution Agreement (like in the recitals, ¶ 3 or ¶ 16), but it also does not reference events "occurring contemporaneously with or prior to the Effective Date of this Agreement" as covered by the release language (like in ¶ 7).  Finally, Paragraph 9 does not use past-tense language such as "the products it <u>has provided</u> to Tacony."  In fact, Tacony emphasizes in its Opposition that the phrase "the products it provides" is "**(present, not past tense).**"  Opposition, 8:17 (emphasis in original).  Accordingly, the plain language of Paragraph 9(b) indicates it applies to the future and therefore this Court should not construe the language to apply retroactively to products containing the 39 designs at issue that had already been sold under the Distribution Agreement.

### 3.    <u>Tacony's Interpretation Renders Sections of the Settlement Agreement Meaningless.</u>

Texas courts "must examine the entire contract in an effort to harmonize and effectuate all of its provisions <u>so that none are rendered meaningless</u>" or "<u>useless or inexplicable</u>" and courts "will not give controlling effect to any single provision; instead, [they] read all of the provisions <u>in light of the entire agreement</u>."  *Southern Chemical Corp. v. Celanese, Ltd.*, 2009 WL 3110941 at *2 (Tex.App.-Hous. (14 Dist.))(emphasis added); *Basic Energy Services, LP v. Great Norther Insurance Co.*, 2009 WL 3092466 at *4 (C.A.5 (Tex.)); *Killeen v. Lighthouse Electrical Contractors*, 248 S.W.3d 343, 349 (2007).  As one court expressed: "Perhaps most importantly, a single contract provision may not be interpreted so as to destroy and contradict other express provisions and the whole tenor and effect of the parties' contract."  *Lavaca Bay Autoworld, L.L.C. v. Marshall Pontiac Buick Oldsmobile*, 103 S.W.3d 650, 659 (2003).  Furthermore, under Texas law, "indemnity agreements are to be strictly construed

5

against the indemnitee." *Rink v. BCCK Engineering, Inc.*, 36 F.3d 90, 1994 WL 523902 at *1-2 (C.A.5 (Tex.)); *Safeco Ins. Co. of America v. Gaubert*, 829 S.W.2d 274, 281 (1992).

Tacony repeatedly argues that paragraph 9's warranties in the Settlement Agreement apply to the 39 designs at issue (sold as part of products shipped pursuant to the Distribution Agreement). If we assume *arguendo* that paragraph 9 of the Settlement Agreement applies to these products, both the broad scope of the release in paragraph 7 and the limited duration of the express indemnity and limits of liability in paragraph 16 become illusory. If, however, paragraph 9 is understood to apply to the future sale of goods, there is no conflict among the various provisions in the Settlement Agreement.

### 4.    The Settlement Agreement Bars Claims Based on Implied Warranties.

Tacony's arguments related to its Warranty of Fitness and Warranty of Merchantability claims are inapt. As alleged by Tacony in its Third Party Complaint, Action Tapes made its warranties of fitness and merchantability <u>at the time the Distribution Agreement was entered into.</u> TPC, ¶¶ 22, 23, 28, 29. Accordingly, any implied warranties of fitness and merchantability related to the 39 designs at issue were made pursuant to the Distribution Agreement and therefore were settled and released pursuant to the Settlement Agreement. Tacony cannot now assert breaches of warranties that were already released.

### 5.    The Texas UCC and Business and Commerce Code Are Inapplicable to Disclaim Warranties In The Context of a Settlement and Release.

Though Tacony acknowledges that, "no case was found which addresses definitively whether the [Uniform Commercial Code] in Texas applies to a settlement agreement such as the MSA here" (Opposition, 15:26-27), Tacony makes several arguments applying the Uniform Commercial Code ("UCC") to the Settlement Agreement. Tacony argues that: (1) The UCC in Texas applies to the Settlement Agreement because the Settlement Agreement governs the sale of goods (Opposition, 15:21-17:4); (2) Tacony may bring a claim for breach of warranty pursuant to the

6

statutes of limitations contained in the UCC (*Id*. at 15:21-19:2); (3) "[T]o the extent the UCC in Texas applies to the MSA," the Settlement Agreement provides implied warranties of merchantability, fitness, and non-infringement (*Id*. at 19:4-20:11); and (4) The implied warranties were not "excluded, released, or disclaimed" by the Settlement Agreement (*Id*. at 20:13-21:18).

All of Tacony's arguments concerning the applicability of the UCC to the Settlement Agreement are irrelevant because the 39 designs at issue were sold pursuant to the Distribution Agreement – not the Settlement Agreement. As explained above, any of Tacony's rights pursuant to products sold under the Distribution Agreement were released by the Settlement Agreement. Therefore, whether the UCC applies to the Settlement Agreement makes no difference to Tacony's claims related to the 39 designs. Similarly, Tacony alleges that the Texas UCC requires express disclaimer of warranty language in order for implied warranties to be waived. Although the Texas UCC requirements may have applied to the Distribution Agreement, the release language in the Settlement Agreement makes those express disclaimer obligations moot.

**E.    PARAGRAPH 21 TERMINATED THE PARTIES' OBLIGATIONS UNDER THE SETTLEMENT AGREEMENT.**

Paragraph 21 of the Settlement Agreement reads, "<u>Unless otherwise specified herein</u>, all of the obligations of the Parties, except for the mutual releases in paragraphs 7 and 8, automatically expire one (1) year from the Effective Date of this Agreement." MSA, ¶ 21 (emphasis added). The plain and ordinary meaning of this provision is that <u>unless a section of the Settlement Agreement giving rise to an obligation of a party specifies that a certain expiration time applies, or specifies that no expiration date applies</u>, the expiration date will be one year from the Settlement Agreement's execution.

Tacony argues that paragraph 21 does not apply to paragraph 9 because "there is no expiration or limitation on Action Tapes' unilateral warranties and indemnifications in ¶¶ 9(b) and (c)." Opposition, 8:14-16. However, an absence of a separately stated expiration date in paragraph 9 cannot mean the obligation remains open ended forever

7

1  because that would be directly contradictory to paragraph 21.

2         Furthermore, Tacony's arguments regarding the definition of the term

3  "obligations" are incongruous with both the plain meaning of the term and the

4  referenced Texas case law. *Id.* at 10:15 – 12:10. First, Tacony argues that the "plain

5  and common meaning of the word 'obligations'" does not apply to "Action Tapes'

6  express <u>warranties</u> and Tacony's <u>right to indemnity</u>." *Id.* at 10:17-23 (emphasis added).

7  This argument is mere semantics as one party's right is the other party's obligation.  In

8  the context of a settlement and release agreement with post settlement obligations, it is

9  not unreasonable for the parties to contract for a future date at which time both parties'

10 performance is completed, all obligations are extinguished, and the parties can walk

11 away and have their peace.  Therefore, even if Tacony were correct and paragraph 9

12 somehow applied to the 39 designs at issue (it does not), paragraph 21 renders paragraph

13 9 expired and unenforceable.

14        Second, Tacony argues that though the parties' "obligations" under the Settlement

15 Agreement are "terminated and excused," Tacony's "rights," including its rights to

16 indemnity under ¶ 9, are "not extinguished by the termination of the [Settlement

17 Agreement]." *Id.* at 11:22-24.  Tacony relies on *Sid Richardson Carbon & Gasoline Co.*

18 in support of its argument that there is a distinction between "obligations" and "rights;"

19 however, the court's discussion in *Sid Richardson* does not concern any difference

20 between "obligations" and "rights."  Rather, the court examined the distinction in

21 Section 2.106(c) of the Texas Business and Commerce Code between "vested" versus

22 "executory" rights and/or obligations.  *See, Sid Richardson Carbon & Gasoline Co. v.*

23 *Interenergy Resources, Ltd.*, 99 F.3d 746, 754 (1996).  Moreover, the court in *Sid*

24 *Richardson* noted that the contract at issue was (1) inherently ambiguous, and (2) silent

25 regarding whether contractual obligations survived the termination clause.  These facts

26 are wholly distinct from the instant case, wherein the MSA is (1) not ambiguous, and (2)

27 not silent regarding whether contractual obligations survive the termination clause.

28 MSA, ¶ 21 ("Unless otherwise specified herein, all of the obligations of the

**ACTION TAPES, INC.'S REPLY TO TACONY CORPORATION'S
OPPOSITION TO MOTION TO DISMISS THIRD PARTY COMPLAINT**

1  Parties…automatically expire…").

2      Further, as explained above, Action Tapes' warranties in paragraph 9 apply to
3  products sold pursuant to the Settlement Agreement (i.e. after its execution), and <u>not</u>
4  products sold and delivered pursuant to the Distribution Agreement, like the 39 designs
5  at issue.  Therefore, whether or not Action Tapes' warranties in paragraph 9 are
6  terminated makes no difference because the 39 designs at issue were <u>not</u> sold in
7  products delivered pursuant to the Settlement Agreement – they were allegedly sold in
8  products delivered under the Distribution Agreement.

9      Finally, several Texas cases have referred to the "obligation to indemnify." *See,*
10 *e.g., Rink v. BCCK Engineering, Inc.*, 36 F.3d 90, 1994 WL 523902 at *2 (C.A.5 (Tex.))
11 (emphasis added)("Walter is not <u>obligated to indemnify</u> [Defendant]"); *see also Griffin*
12 *Industries, Inc. v. Foodmaker, Inc.*, 22 S.W.3d 33, 36 (2000)(emphasis added)("Griffin's
13 <u>indemnity obligation</u> terminated on March 22, 1994"); *see also Safeco Ins. Co. of*
14 *America v. Gaubert*, 829 S.W.2d 274, 281 (1992)("The indemnity agreement governs
15 the parties' rights and obligations").  Accordingly, the gravamen of any impleader action
16 is indemnification, which has been determined to be an obligation, and therefore
17 terminated by paragraph 21.

18 **F.    <u>THIS COURT SHOULD CONSTRUE THE SETTLEMENT AGREEMENT</u>**
19      **<u>AS UNAMBIGUOUS AND DISMISS TACONY'S THIRD PARTY</u>**
20      **<u>COMPLAINT</u>**

21      "An ambiguity does not necessarily arise simply because the parties advance
22 different interpretations of the contract's language." *Cross Timbers Oil Co. v. Exxon*
23 *Corp.*, 22 S.W.3d 24, 26 (Tex. App.- Amarillo 2000).  "Determining whether an
24 ambiguity exists is a question of law for the court." *Southern Chemical Corp. v.*
25 *Celanese, Ltd.*, 2009 WL 3110941 at *2 (Tex.App.-Hous. (14 Dist.)).  "<u>A contract that</u>
26 <u>may be given a definite or certain meaning is **not** ambiguous and will be construed as a</u>
27 <u>matter of law</u>." *Id.* (emphasis added).

28 / / /

**ACTION TAPES, INC.'S REPLY TO TACONY CORPORATION'S**
**OPPOSITION TO MOTION TO DISMISS THIRD PARTY COMPLAINT**

The Settlement Agreement is not ambiguous. Tacony misplaces its reliance on paragraph 9, arguing that its warranties apply to the 39 designs at issue. In fact, paragraph 9 uses syntax indicating it applies only to future designs ("the products it provides"), it is copied verbatim from paragraph 10 of the Distribution Agreement which also only applied to future designs, and there is no language stating or even suggesting that it applies to past designs.

As discussed herein, Tacony's Third Party Complaint must be dismissed because the 39 designs at issue were sold in products pursuant to the Distribution Agreement and are therefore subject to the release contained in paragraph 7, the indemnification provisions contained in paragraph 16, and, in any event, the catch-all termination provision in paragraph 21 of the Settlement Agreement.

Tacony's construction of paragraph 9 of the Settlement Agreement interprets "a single contract provision…so as to destroy and contradict other express provisions and the whole tenor and effect of the parties' contract" while Action Tapes' explanation of paragraph 9 "harmonizes and effectuate all of its provisions." *Lavaca Bay Autoworld, L.L.C., supra,* 103 S.W.3d at 659; *Southern Chemical Corp., supra,* at *2,; *Basic Energy Services, LP, supra,* 2009 WL 3092466 at *4; *see also Killeen, supra,* 248 S.W.3d at 349.

## II. CONCLUSION

For the reasons stated above, Action Tapes respectfully requests that this Honorable Court dismiss the Third Party Complaint, without leave to amend.

DATED: October 9, 2009

Respectfully submitted,

RICHARDSON & PATEL LLP

/s/ADDISON ADAMS

10

## CERTIFICATE OF SERVICE

I hereby certify that a copy of **ACTION TAPES, INC.'S REPLY TO TACONY CORPORATION'S OPPOSITION TO MOTION TO DISMISS THIRD PARTY COMPLAINT** was filed electronically with the Clerk of the Court this 9th day of October 2009, and will be served electronically to designated CM/ECF participant counsel through the court's electronic filing system and mailed served to the other interested parties in this action.

/s/ Maria T. Castro

**ACTION TAPES, INC.'S REPLY TO TACONY CORPORATION'S OPPOSITION TO MOTION TO DISMISS THIRD PARTY COMPLAINT**