Addison K. Adams (State Bar No. 186545)
aadams@richardsonpatel.com
Victor T. Fu (State Bar No. 191744)
vfu@richardsonpatel.com
Deborah Pouratian Heald (State Bar No. 246385)
dheald@richardsonpatel.com
RICHARDSON & PATEL LLP
10900 Wilshire Blvd., Suite 500
Los Angeles, California 90024
Telephone: (310) 208-1182
Facsimile: (310) 208-1154

Attorneys for Third Party Defendant
ACTION TAPES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| IMAGELINE, INC., a Virginia corporation;<br><br>Plaintiff,<br><br>v.<br><br>TACONY CORPORATION, a Missouri corporation; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>TACONY CORPORATION, a Missouri corporation,<br><br>Third Party Plaintiff<br><br>v.<br><br>ACTION TAPES, INC., a Texas corporation; JOHN DEER, an individual; and ROES 1 through 50, inclusive,<br><br>Third Party Defendants. | Case No. SACV 09-0353 CJC MLGx [Before the Honorable Cormac J. Carney]<br><br>**ACTION TAPES, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION; SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Separate Statement of Undisputed Material Facts; Declaration of Gary Gardner; Declaration of Jackie Woods; Declaration of Larry Friedman, Esq.]<br><br>Date:        November 30, 2009<br>Time:        1:30 PM<br>Courtroom: 9B |

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to the Court's Order dated October 14, 2009, on November 30, 2009, at 1:30 p.m. in Courtroom 9B of the United States District Court, Central District, Southern Division, located at 411 West Fourth Street, Santa Ana, California, Third Party Defendant Action Tapes, Inc. ("Action Tapes") shall move for summary judgment as to all claims alleged against Action Tapes.

This Motion is made on the grounds that there is no genuine issue as to any material fact and Action Tapes is entitled to judgment as a matter of law. Third Party Plaintiff Tacony Corporation ("Tacony") cannot prevail on its first cause of action for breach of express written warranty, its second cause of action for breach of implied warranty of fitness, or its third cause of action for breach of implied warranty of merchantability as these claims are barred by the Mediation Settlement Agreement executed by Tacony and Action Tapes in January 2006.

This Motion is based upon this Notice of Motion, the attached Supplemental Memorandum of Points and Authorities, the Separate Statement of Undisputed Material Facts, the Declaration of Gary Gardner, the Declaration of Jackie Woods, the Declaration of Larry Friedman, Esq., the Court's file in this matter, and any further evidence, argument and papers that may be presented to the Court.

DATED:  November 9, 2009                    RICHARDSON & PATEL LLP


                                            /s/ADDISON ADAMS

1

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

Third Party Defendant Action Tapes, Inc. hereby submits its Supplemental Memorandum of Points and Authorities in support of its Motion for Summary Judgment or, Alternatively, Summary Adjudication of Claims as to Third Party Plaintiff Tacony Corporation's Third Party Complaint.

## I.

## INTRODUCTION

The Complaint by Plaintiff Imageline, Inc. ("Imageline") against Defendant Tacony Corporation ("Tacony") alleges causes of action for copyright infringement related to certain embroidery designs. Defendant and Third Party Plaintiff Tacony alleges in the Third Party Complaint ("TPC") that thirty-nine (39) of these embroidery designs were supplied to Tacony by Third Party Defendant Action Tapes, Inc. ("Action Tapes") pursuant to a written distribution agreement. TPC, ¶13. Accordingly, Tacony alleges causes of action for indemnity and breaches of warranties against Action Tapes for supplying the allegedly infringing embroidery designs to Tacony.

However, Tacony and Action Tapes entered into a Mediation Settlement Agreement (the "Settlement Agreement") in January 2006, resolving all claims between them, including any claims that Tacony has alleged, or could allege, related to the 39 designs. Id. at ¶9 and Exh. B thereto.[1] The Settlement Agreement is therefore a complete defense to the Third Party Complaint.

Accordingly, Action Tapes respectfully requests that its Motion for Summary Judgment against Tacony's Third Party Complaint be granted under Federal Rule of Civil Procedure Rule 56(c) on the grounds that Tacony's claims were resolved pursuant to the express written terms of the Settlement Agreement.

/ / /

---

[1] The Settlement Agreement is also attached as Exhibit B to the Declaration of Gary Gardner, filed concurrently herewith.

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

## II.

## PROCEDURAL HISTORY

On or about March 20, 2009, Imageline commenced the action against Tacony for (1) Copyright Infringement, (2) Providing False Copyright Management Information, and (3) Removal/Altering of Copyright Management Information. Tacony filed an Answer to the Complaint on June 18, 2009, and the instant Third Party Complaint against Action Tapes on June 26, 2009. The Third Party Complaint alleges claims for (1) Breach of Express Written Warranty, (2) Breach of Implied Warranty of Fitness, and (3) Breach of Implied Warranty of Merchantability. The claims against Action Tapes are based on thirty-nine (39) embroidery designs that Action Tapes allegedly supplied to Tacony.

Action Tapes filed a Notice of Motion and Motion to Dismiss Tacony's Third Party Complaint on September 23, 2009. Tacony filed its Opposition to the same on October 5, 2009. Action Tapes, in turn, filed a Reply on October 9, 2009. This honorable Court converted Action Tapes' Motion to Dismiss into a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 12(d) via Order dated October 14, 2009. The instant motion is submitted pursuant to the Court's order.

## III.

## STATEMENT OF FACTS

A.   **THE CIRCUMSTANCES LEADING UP TO THE MEDIATION BETWEEN ACTION TAPES AND TACONY**

The relationship between Action Tapes and Tacony commenced sometime in or about 1995. TPC, ¶8; Declaration of Gary Gardner (hereafter, "Gardner Decl."), ¶3. Since 1995, Action Tapes supplied Tacony with tens of thousands of embroidery designs for distribution and re-sale by Tacony to retailers and consumers pursuant to two separate distribution agreements. Gardner Decl., ¶3. Following the expiration of the initial distribution agreement, in or about December 2001, Action Tapes and Tacony entered into the second Distribution Agreement (the "Distribution Agreement").

3

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

1  Separate Statement of Undisputed Facts (hereafter, "Separate Statement"), Fact No. 1;
2  TPC, ¶8 and Exh. A thereto; Gardner Decl., ¶3 and Exh. A thereto.

3      During the term of the Distribution Agreement, several disputes arose between
4  Action Tapes and Tacony concerning each side's performance thereunder.  Gardner
5  Decl., ¶4; Exh. B thereto, p. 1, second recital.  In particular, Action Tapes raised several
6  objections over Tacony's repeated violations of the exclusivity provision of the Second
7  Distribution Agreement as well as the calculation and nonpayment of amounts due to
8  Action Tapes.  Gardner Decl., ¶4.  After Action Tapes made several attempts to resolve
9  this dispute with Tacony, no resolution was reached through direct discussions between
10  the parties.  Id.

11      In or about November 2005, Gary Gardner, the President of Action Tapes,
12  demanded that the parties engage in mediation in a final attempt to resolve the dispute
13  before initiating litigation, as required by the Distribution Agreement.  Gardner Decl.,
14  ¶¶1, 4.  Tacony and Action Tapes participated in a mediation in Dallas, Texas on or
15  about December 13, 2005.  Id., Exh. B at p.1, third recital; Gardner Decl., ¶5.  Action
16  Tapes was represented at the mediation by its counsel, Larry Friedman, and Tacony was
17  represented by its own counsel.  Gardner Decl., ¶5; Declaration of Larry Friedman
18  (hereafter, "Friedman Decl."), ¶1.  By the end of the mediation, the parties had orally
19  agreed to several key terms: (1) there would be a general release of all claims, known
20  and unknown, with regard to all business conducted between the parties up until the
21  execution of the Settlement Agreement (memorialized in paragraphs 7 & 8 of the
22  Settlement Agreement); (2) going forward, the parties had the right to do business with
23  whichever companies they wanted and were under no obligation to do business with one
24  another (memorialized in paragraph 19 of the Settlement Agreement); (3) going
25  forward, if the parties chose to do business with each other, Action Tapes agreed to sell
26  products to Tacony under certain favorable terms as would be outlined in the Settlement
27  Agreement (memorialized in paragraph 5 of the Settlement Agreement).  Gardner Decl.,
28  ¶5; Friedman Decl., ¶2.

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

**B.    THE MEDIATION SETTLEMENT AGREEMENT**

Following the mediation, Action Tapes' and Tacony's legal counsel worked at length for almost one month to prepare a final draft of the Settlement Agreement for execution by the parties.  Gardner Decl., ¶6; Friedman Decl., ¶3.  Counsel for both parties exchanged multiple drafts of settlement agreements via e-mail, addressed numerous issues identified by both parties, commented on each other's drafts, and negotiated changes, until a final settlement agreement was deemed acceptable to both parties.  Friedman Decl., ¶3 and Exh. A thereto.[2]  The Settlement Agreement was executed by the parties on or about January 9, 2006 with an effective date of January 1, 2006.  Gardner Decl., ¶6 and Exh. B thereto.  The Settlement Agreement expressly governed both: (1) the release of all claims between the parties occurring up until the execution of the Settlement Agreement, and (2) the terms of future business, if any, between the parties.  Gardner Decl., ¶7; Tacony's Opposition to Action Tapes' Motion to Dismiss, 17:14 – 18:4, 16:9-10 ("Future sales of goods between Action Tapes and Tacony are a dominant factor in the Settlement Agreement, occupying at least three (3) separate sections…").  In the Settlement Agreement, the parties "agreed to compromise and settle their disputes, without admitting any liability."  Gardner Decl., Exh. B at p.1, fourth recital.  The parties also chose to terminate the Distribution Agreement on December 31, 2005, one full year early.  Id. at ¶1.  The Settlement Agreement, effective as of January 1, 2006 (and concurrent with the acknowledged termination of the Distribution Agreement), expressly superseded all prior agreements, including the

---

[2] Paragraph 20 of the Settlement Agreement sets forth as follows: "Each Party represents that this Agreement is the product of negotiations among the Parties.  All parties acting through their attorneys have participated in the drafting of this Agreement.  Therefore, no Party to this Agreement shall be charge with having promulgated this Agreement or have this document construed for or against a Party under the rules of contract construction."  Gardner Decl., Exh. B, ¶21.

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

Distribution Agreement.  Separate Statement, Fact No. 4; Gardner Decl., ¶6 and Exh. B, ¶¶4, 15; TPC, ¶9.  No other distribution agreement was entered into thereafter.  The Settlement Agreement further terminated the exclusive distribution relationship between Action Tapes and Tacony and provided that the parties were under no obligation to do business with one another in the future.  Gardner Decl., Exh. B, ¶19.

The Settlement Agreement expressed that "all claims for the payment of money under the Distribution Agreement by each Party against the other Party shall be and is hereby compromised, settled, released, waived, and discharged…" Id. at ¶3 (emphasis added).  Moreover, each party agreed to "now and forever hereby compromise, settle, release and discharge" the other party "of and from any and all debts, claims, demands, causes of action…contracts, agreements, promises, liabilities, damages…whatsoever, known or unknown, accrued or unaccrued, suspected or unsuspected, in law or in equity, whether having arisen or hereafter to arise…from any event occurring contemporaneously with or prior to the Effective Date of this [Settlement Agreement], including but not limited to any claims actually asserted or which could have been asserted…to date." Id. at ¶¶7-8 (emphasis added).  The mutual releases in Paragraphs 7 and 8 of the Settlement Agreement applied to all prior business dealings between Action Tapes and Tacony, including any claims arising from products previously shipped under the Distribution Agreement. Id.

The Settlement Agreement also addressed that the parties must indemnify one another "from and against all suits…[and] claims…arising out of, resulting from or related to third-party claims for damages…associated with…the sale of…products which are the subject of the Distribution Agreement…or by any breach by either party of the Distribution Agreement." Id. at ¶16(a) (emphasis added).  However, the parties' indemnification obligations ceased one year after the termination of the Settlement Agreement. Id. at 16(d).  Pursuant to paragraph 21 of the Settlement Agreement, all obligations of the parties (except for the releases exchanged between them), expired on

6

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

1 January 1, 2007 (one year after the effective date).[3]  No further business was conducted

2 between Action Tapes and Tacony under the Settlement Agreement after January 17,

3 2006.  Gardner Decl., ¶¶9, 12 and Exh. C thereto, 1:1; Woods Decl., ¶¶1, 3.  Hence, the

4 parties' indemnification obligations expired on or before January 1, 2008.  Gardner

5 Decl., Exh. B, ¶21.

6      The Settlement Agreement provides warranties to apply to any products sold after

7 the execution of the Settlement Agreement using language that is identical to the

8 Distribution Agreement.  Gardner Decl., ¶7, Exh. B thereto, ¶9, and Exh. A thereto, ¶10.

9 The warranties from the Distribution Agreement (¶10) were copied verbatim and placed

10 into the Settlement Agreement (¶9).  Gardner Decl., ¶7.  Action Tapes agreed to these

11 warranties only because of and in anticipation of possible future sales of embroidery

12 designs in electronic media to Tacony by Action Tapes.  Id.  Action Tapes did not agree

13 that those warranties would apply to products already shipped under the Distribution

14 Agreement, as any liability related to those products was released pursuant to paragraph

15 7 of the Settlement Agreement.  Id.

16 **C.    BUSINESS BETWEEN ACTION TAPES AND TACONY AFTER**

17 **EXECUTION OF THE SETTLEMENT AGREEMENT**

18      Following the Parties' execution of the Settlement Agreement, Action Tapes sold

19 the assets comprising its business of selling embroidery designs in electronic media

20 under the "Great Notions" name to a third party, Bernina of America, Inc. ("Bernina")

21 and its wholly-owned subsidiary, Great Notions, Inc.  Gardner Decl., ¶9, and Exh. C

22 thereto.  Action Tapes had begun discussing a potential sale of these assets to Bernina

23 ───────────────────

24      [3] Paragraph 21 of the Settlement Agreement states "Unless otherwise specified

25 herein, all of the obligations of the Parties, except for the mutual releases in paragraphs

26 7 and 8, automatically expire one (1) year from the Effective Date of this Agreement."

27 Id. at Exh. B thereto, ¶21.

28

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

after Action Tapes was unable to reach an informal resolution of its disputes with Tacony and after demanding mediation with Tacony. Id. Although the discussions had commenced prior to the mediation and the execution of the Settlement Agreement, Action Tapes and Bernina did not finalize terms nor execute the sale of the Great Notions assets until over a month after the mediation took place and over two weeks after the Settlement Agreement's effective date. Id. and Gardner Decl., Exh. B, ¶4. Action Tapes advised Tacony of the sale of Great Notions' assets to Bernina immediately after the sale was completed. Gardner Decl., ¶9.

As Action Tapes sold Great Notions' assets to Bernina on January 17, 2006, the only sales of embroidery designs between Action Tapes and Tacony after the Settlement Agreement's effective date, took place between January 1, 2006 and January 16, 2006. Gardner Decl., ¶¶9, 12 and Exh. C thereto, 1:1; Woods Decl., ¶¶1, 3.

**D.    THE 39 DESIGNS AT ISSUE IN THE INSTANT DISPUTE**

Tacony's claims against Action Tapes relate to thirty-nine (39) specific embroidery designs (the "39 Designs") allegedly supplied by Action Tapes to Tacony. TPC, ¶¶12-13, 20, 23, 27, 30, and Exh. D thereto; Tacony's Opposition to Action Tapes' Motion to Dismiss, e.g., 3:2 ("the 39 Accused Action Tapes Designs"). Tacony has alleged that the 39 Designs were sold to Tacony prior to the termination of the Distribution Agreement. Separate Statement, Fact No. 3; TPC, ¶¶20, 22, 23, 27. Action Tapes's review of records of sales to Tacony from January 1, 2006 to January 16, 2006 determined that none of the 39 Designs were supplied to Tacony during that period of time. Gardner Decl., ¶¶10-11; Declaration of Jackie Woods (hereafter, "Woods Decl."), ¶¶2-3 and Exh. A thereto. Hence, even assuming that Action Tapes supplied the 39 designs to Tacony, it is undisputed that the 39 designs were supplied prior to the effective date of the Settlement Agreement. Id. at ¶12.

/ / /

/ / /

/ / /

8

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

# IV.

## RELEVANT LEGAL STANDARDS

### A.    LEGAL STANDARDS FOR SUMMARY JUDGMENT

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citing to Fed. R. Civ. P. 1).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims…to preven[t]…the attendant unwarranted consumption of public and private resources" of going to trial.  U.S. ex rel. Anderson v. Northern Telecom, Inc., 52 F.3d 810, 815 (9th Cir., 1995) (citing to Celotex, supra, 477 U.S. at 323-24).  Indeed, a federal court must grant summary judgment if the papers show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Williams v. Caterpillar, Inc., 944 F.2d 658, 661 (9th Cir., 1991) (citing to Fed. R. Civ. P. 56(c)); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir., 1991) (citing to Fed. R. Civ. P. 56(c)).

Ambiguity of a contract is a question of law for the court.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir., 2003).  A court may grant a summary judgment motion touching upon contract interpretation when the agreement is found to be unambiguous.  Id. at 888.   If the contract terms are clear and unambiguous, summary judgment is appropriate even if the parties disagree as to the meaning of the contract terms.  Kassbaum v. Steppenwolf Prod., Inc., 235 F.3d 487, 491 (9th Cir., 2000); United Bhd. of Carpenters and Joiners of Am., Lathers Local 42-L v. United Bhd. of Carpenters and Joiners of Am., 73 F.3d 958, 961 (9th Cir., 1996).

### B.    CONTRACT INTERPRETATION UNDER TEXAS STATE LAW

Texas state law governs interpretation of the Settlement Agreement between Action Tapes and Tacony.  The Settlement Agreement provides as follows: "This Agreement shall be governed by and construed and enforced in accordance with the

9

laws of the State of Texas applicable to contracts made and to be performed therein."
Settlement Agreement, ¶14.

Under Texas state law, the language in a contract is to be given its plain grammatical meaning, unless doing so would defeat the parties' intent.  Cross Timbers Oil Co. v. Exxon Corp., 22 S.W.3d 24, 26 (Tex.App.-Amarillo 2000).  Like California, in Texas, "Determining whether an ambiguity exists is a question of law for the court." Southern Chemical Corp. v. Celanese, Ltd., 2009 WL 3110941 at *2 (Tex.App.-Hous. (14th Dist.)).  "A contract that may be given a definite or certain meaning is **not** ambiguous and will be construed as a matter of law."  Id. (emphasis added).  Therefore, an ambiguity does not necessarily arise simply because the parties advance different interpretations of a contract's language.  Cross Timbers Oil Co., 22 S.W.3d at 26.

Texas courts "must examine the entire contract in an effort to harmonize and effectuate all of its provisions so that none are rendered meaningless" or "useless or inexplicable" and courts "will not give controlling effect to any single provision; instead, [they] read all of the provisions in light of the entire agreement."  Southern Chemical Corp., 2009 WL 3110941 at *2 (emphasis added); Basic Energy Services, LP v. Great Northern Insurance Co., 2009 WL 3092466 at *4 (5th Cir. 2009); Killeen v. Lighthouse Electrical Contractors, 248 S.W.3d 343, 349 (2007).  As one court aptly expressed: "Perhaps most importantly, a single contract provision may not be interpreted so as to destroy and contradict other express provisions and the whole tenor and effect of the parties' contract."  Lavaca Bay Autoworld, L.L.C. v. Marshall Pontiac Buick Oldsmobile, 103 S.W.3d 650, 659 (2003).  The courts' primary concern in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument.  ERG Res. v. Merlon Texas, Inc., 2009 WL 3491049 (Tex. App. –Hous. (1 Dist)).  The entire instrument, taken by its four corners, must be read and considered to determine the true intention of the parties.  Worldwide Asset Purchasing, L.L.C. v. Rent-A-Center East, Inc., 290 S.W. 3d 554, 560 (2009).  Furthermore, under Texas law,

10

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

"indemnity agreements are to be strictly construed against the indemnitee." <u>E.g.</u>, <u>Halliburton Oil Well Cementing Co. v. Paulk</u>, 180 F.2d 79, 84 (5th Cir., 1950).

Likewise, in interpreting a settlement agreement and release, the primary effort is to ascertain and give effect to the intention of the parties to the release. <u>Phan v. Addison Spectrum, L.P.</u>, 244 S.W.3d 892, 895 (2008). An effective release can be broadly worded and include release of unknown claims and damages that arise in the future out of the same events. <u>Keck, Mahin & Cate v. National Fire Union Insurance Co.</u>, 20 S.W.3d 692, 698 (2000); <u>Stinnett v. Colorado Interstate Gas Co.</u>, 227 F.3d 247, 255 (5th Cir. 2000). In <u>Keck</u>, the court stated as follows:

> "[The present release] is not expressly limited to a specific claim or transaction but rather purports to cover 'all demands, claims or causes of action of any kind whatsoever.' … Although releases often consider claims existing at the time of execution, a valid release may encompass unknown claims and damages that develop in the future. (Internal citations omitted.) Thus, we conclude that this release was sufficient to forgive all claims against KMC…"

<u>Keck, Mahin & Cate</u>, 20 S.W.3d at 698. Accordingly, a broadly worded release of any and all claims such as the release language provided in paragraph 7 of the Settlement Agreement is effective and enforceable under Texas state law.

**V.**

**LEGAL ARGUMENT**

**A.    THE 39 DESIGNS AT ISSUE WERE SOLD PURSUANT TO THE DISTRIBUTION AGREEMENT – PRIOR TO EXECUTION OF THE SETTLEMENT AGREEMENT**

The 39 Designs at issue in this matter (TPC, Exh. D) were allegedly supplied by Action Tapes to Tacony under the Distribution Agreement. Separate Statement, Fact #2; TPC, ¶¶20, 22, 23, 27, 30; Gardner Decl., ¶12. Tacony alleges as follows:

11

---

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

"In or about 1995 and again in 2001…Tacony entered into exclusive written Distribution Agreements with….Action Tapes whereby Action Tapes granted to Tacony an exclusive license to distribute…various embroidery designs (Ex. 'A'), including the 39 Accused AT Designs (Ex. 'D')." TPC, ¶¶20, 27 (emphasis added).  Tacony also alleges, "At the time the parties entered into the Action Tapes Distribution Agreement…there was an implied warranty that the goods were fit for such purpose." Id. at ¶22 (emphasis added).  Likewise, Tacony alleges, "Action Tapes…breached [its] implied warrant[y] of fitness made at the time [the Distribution Agreement was] entered into…in that the 39 Accused AT Designs…allegedly infringe the copyrights…" Id. at ¶23 (emphasis added).

Accordingly, it is undisputed that, even assuming Action Tapes supplied the 39 Designs, the 39 Designs were sold to Tacony under the Distribution Agreement. Moreover, Mr. Gardner, the President of Action Tapes, personally reviewed the 39 Designs along with Tacony's sales records from January 1, 2006 to January 16, 2006, the only time period during which Action Tapes could have sold any products to Tacony after the Settlement Agreement was effective.  Gardner Decl., ¶¶9-12.  Mr. Gardner determined that none of the 39 designs were sold to Tacony between those dates in January of 2006.  Id.  Therefore, if the 39 designs were sold from Action Tapes to Tacony as alleged, they were sold prior to the effective date of the Settlement Agreement, while the Distribution Agreement was in effect.  Id. at ¶12.

**B.   THE PURPOSE OF THE SETTLEMENT AGREEMENT WAS TO SETTLE ALL CLAIMS RELATED TO THE DISTRIBUTION AGREEMENT**

The Settlement Agreement's stated purpose was to settle the "disputes" between the parties "about each others' performance under the Distribution Agreement and…to compromise and settle their disputes…in this Mediation Settlement Agreement." Gardner Decl., Exh. B, Recitals (emphasis added).  Pursuant thereto, the Settlement Agreement resolves disputes over monetary payments (Id. at ¶ 3) and includes broad

12

1  "release" language to "compromise, settle, release and discharge" Action Tapes "of and

2  from any and all…claims, demands, causes of action, matters, …covenant, contracts,

3  agreements, promises, liabilities, damages, losses, costs and expenses whatsoever,

4  known or unknown, accrued or unaccrued, suspected or unsuspected, in law or in equity,

5  whether having arisen or hereafter to arise…including but not limited to any claims

6  actually asserted or which could have been asserted…to date." Id. at ¶ 7.  As set forth

7  above, under Texas state law, a release can be broadly worded and include release of all

8  claims, including claims unknown to exist at the time the release is entered into.  Keck,

9  Mahin & Cate, supra, 20 S.W.3d at 698; Stinnett, supra, 227 F.3d at 255.  The

10  Settlement Agreement's explicit and lengthy release confirms that Action Tapes has

11  already settled and compromised any potential liability related to the 39 Designs

12  allegedly sold under the Distribution Agreement.

13       The Settlement Agreement also specifically addressed potential third-party claims

14  related to the Distribution Agreement, such as the instant dispute.  The Settlement

15  Agreement stated that the parties must indemnify one another "from and against all

16  suits…[and] claims…arising out of, resulting from or related to third-party claims for

17  damages…associated with…the sale of…products which are the subject of the

18  Distribution Agreement…or by any breach by either party of the Distribution

19  Agreement." Id. at ¶16(a) (emphasis added).  However, the parties' indemnification

20  obligations expired one year after the termination of the Settlement Agreement.  Id. at

21  16(d).  Therefore, the parties' indemnification obligations expired on January 1, 2008,

22  which is one year after the termination of the Settlement Agreement on January 1, 2007.

23  Id. at ¶21.

24  **C.**  **PARAGRAPH 9 OF THE SETTLEMENT AGREEMENT RELATES TO**

25         **THE SETTLEMENT AGREEMENT'S OTHER PURPOSE –**

26         **GOVERNING ANY FUTURE BUSINESS BETWEEN THE PARTIES**

27       The Settlement Agreement looks backwards – settling all past disputes related to

28  the Distribution Agreement – and also forwards – delineating how business between the

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS**
**AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

parties (if any) would be transacted thereafter.  See, e.g., Gardner Decl., Exh. B, ¶¶ 4, 5, 9, 10, 11, and 19.  Indeed, Tacony argued in its Opposition to Action Tapes' Motion to Dismiss: "Future sales of goods between Action Tapes and Tacony are a dominant factor in the Settlement Agreement, occupying at least three (3) separate sections…" Opposition, 16:9-10 (emphasis added).[4]  Paragraph 9 of the Settlement Agreement is one of the paragraphs that concerns future sales—after the effective date of the Settlement Agreement.  Tacony has even pointed to paragraph 9 as one of the forward looking sections: "[T]he warranty in ¶9(c) explicitly extends to the future performance of the goods to be sold."  Id. at 17:16-17 (emphasis added).  Paragraph 9 does not relate to products sold prior to the effective date of the Settlement Agreement, under the Distribution Agreement.

1.  **Paragraph 9's Plain Meaning In the Context of the Settlement Agreement Is That It Applies to the Future**

Paragraph 9(b) of the Settlement Agreement refers to products Action Tapes "provides" to Tacony and makes no reference to the past or products provided in the past.  Gardner Decl., Exh. B, ¶9(b).  Not only does paragraph 9 not reference the Distribution Agreement (like in the recitals, ¶3 or ¶16), but it also does not reference events "occurring contemporaneously with or prior to the Effective Date of this Agreement" as covered by the release language (like in ¶7).  Finally, Paragraph 9 does not use past-tense language such as "the products it has provided to Tacony."  In fact, Tacony emphasizes in its Opposition that the phrase "the products it provides" is "**(present, not past tense)**."  Opposition, 8:17 (emphasis in original).  Accordingly, the plain language of Paragraph 9(b) indicates it applies to the future and therefore this

_____

[4] While the Settlement Agreement provided for the possibility of future business between the parties, the Settlement Agreement also expressly provided that such future business was not required.  Gardner Decl., Exh. B, ¶19.

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

1  Court should not construe the language to apply retroactively to products containing the

2  39 designs at issue that had already been sold under the Distribution Agreement.

3  **2.**  **Paragraph 9 Was Not Altered From Its Counterpart in the**

4  **Distribution Agreement To Apply to Designs Sold Under the**

5  **Distribution Agreement**

6  Paragraphs 9 (regarding warranties) and 16 (regarding indemnification) of the

7  Settlement Agreement were copied verbatim and almost verbatim, respectively, from

8  paragraphs 10 and 22, respectively, of the Distribution Agreement.  Gardner Decl., Exh.

9  B, ¶¶9, 16, and Exh. A., ¶¶10, 22.  A comparison of paragraph 16 of the Settlement

10  Agreement to paragraph 22 of the Distribution Agreement reveals that the only change

11  in language is to clarify that the indemnity provided by the Settlement Agreement is

12  related to claims arising under the Distribution Agreement, not to future claims arising

13  under the Settlement Agreement.  That is, while paragraph 22 of the Distribution

14  Agreement uses the phrase, "this Agreement" (i.e. "products which are the subject of

15  this Agreement; performance of the work described in this Agreement; breach by either

16  Party of this Agreement"), the Settlement Agreement changes solely the phrase "this

17  Agreement" to instead read, "the Distribution Agreement."  Gardner Decl., Exh. B,

18  ¶¶16(a) and 16(c).

19  On the other hand, paragraph 9 of the Settlement Agreement (including paragraph

20  9(b) which forms the basis for Tacony's claims) contains no similar modification of the

21  forward-looking language found in paragraph 10 of the Distribution Agreement—it is

22  copied verbatim.  Paragraph 10 of the Distribution Agreement applies to products to be

23  distributed under the terms of that agreement—the Distribution Agreement.  The same

24  language is used in the Settlement Agreement, with the same effect, which is that

25  paragraph 9(b) applies to products to be distributed pursuant to that agreement—the

26  Settlement Agreement.  Both paragraphs include the following language: "[Action

27  Tapes] represents and warrants to Tacony and Tacony represents and warrants to

28  [Action Tapes]…it has full power to execute and deliver this Agreement and to perform

15

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS**
**AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

the transactions contemplated hereby…The making of <u>this Agreement</u> does not…violate or conflict with any agreements..binding on or affecting such Party…<u>This Agreement</u> has been duly and properly authorized…" Gardner Decl., Exh. A, ¶10, and Exh. B, ¶9. In these paragraphs, unlike in paragraph 16 of the Settlement Agreement, the parties did not alter instances of the phrase "this Agreement" to instead read, "the Distribution Agreement." This speaks to the intent of the Parties, as the parties altered the indemnification provisions in paragraph 16 to apply retroactively to the products previously sold pursuant to the Distribution Agreement, but the parties <u>did not</u> similarly alter the warranties in paragraph 9 to apply retroactively to the products issued pursuant to the Distribution Agreement. This confirms that paragraph 9 was meant by the parties to apply to future product sales and was not intended to apply to products sold under the Distribution Agreement.

### 3. Tacony's Interpretation of Paragraph 9 Renders Sections of the Settlement Agreement Meaningless

As explained above, under Texas law, courts "must examine the entire contract in an effort to harmonize and effectuate all of its provisions so that none are rendered meaningless" or "useless or inexplicable" and courts "will not give controlling effect to any single provision; instead, [they] read all of the provisions in light of the entire agreement." <u>Southern Chemical Corp., supra,</u> 2009 WL 3110941 at *2; <u>Basic Energy Services, LP, supra,</u> 2009 WL 3092466 at *4; <u>Killeen, supra,</u> 248 S.W.3d at 349. Indeed, "Perhaps most importantly, a single contract provision may not be interpreted so as to destroy and contradict other express provisions and the whole tenor and effect of the parties' contract." <u>Lavaca Bay Autoworld, L.L.C., supra,</u> 103 S.W.3d 650, 659 (2003).

The 39 Designs at issue were sold to Tacony under the Distribution Agreement, and the Settlement Agreement terminated and superseded the Distribution Agreement. TPC, ¶¶20, 22, 23, 27, 30; Gardner Decl., Exh. B, ¶1. Tacony released all claims related to products that were sold by Action Tapes to Tacony while the Distribution Agreement

16

---

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

was in effect.  Separate Statement, Fact #4; Gardner Decl., Exh. B, p. 1, Recitals, ¶¶ 3, 7.  However, Tacony now alleges that the warranties in paragraph 9 of the Settlement Agreement somehow apply to the 39 Designs that were sold under the Distribution Agreement.  TPC, <u>e.g.</u>, ¶¶9, 14.

If we assume *arguendo* that paragraph 9 of the Settlement Agreement applies to products sold under the Distribution Agreement, both the broad scope of the release in paragraph 7 and the limited duration of the express indemnity and limits of liability in paragraph 16 become <u>illusory</u>.  That is, it is impossible to reconcile: (1) an interpretation in which paragraph 9 of the Settlement Agreement warrants products that were provided under the Distribution Agreement, with (2) the fact that paragraphs 7 and 16 release and limit Action Tapes' liability for sales under the Distribution Agreement.  If, however, paragraph 9 is understood to apply to the future sale of products, following the effective date of the Settlement Agreement, there is no conflict among the various provisions in the Settlement Agreement.

### 4.   <u>Tacony's Admission That Paragraph 9(c) Applies To The Future Confirms That 9(b) Likewise Applies To The Future</u>

Paragraph 9(c) of the Settlement Agreement reads, in part: "[Action Tapes] <u>further warrants</u> that the products it provides are compatible with Amazing Design Suite products…" Gardner Decl., Exh. B, ¶9(c) (emphasis added).  This paragraph uses the phrase "<u>further</u> warrants" because paragraph 9(b) reads, in part, "[Action Tapes] <u>warrants</u> that the products it provides…" <u>Id.</u> at ¶9(b).  Therefore, paragraph 9(c) unmistakably continues from paragraph 9(b).

In its Opposition to Action Tapes' Motion to Dismiss, <u>Tacony pointed to paragraph 9(c) as one of the forward looking sections of the Settlement Agreement</u>, arguing, "[T]he warranty in <u>¶9(c)</u> explicitly extends to the future performance of the goods to be sold."  Opposition, 17:16-17 (emphasis added).  It would not make sense if paragraph 9(c) provided warranties for products to be sold in the future and paragraph 9(b) provided warranties for products that were sold under the Distribution Agreement.

17

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

1  Clearly, both 9(b) and 9(c) relate to products to be sold after the effective date of the

2  Settlement Agreement.

3  **D.    PARAGRAPH 21 TERMINATED THE PARTIES' OBLIGATIONS**

4  **UNDER THE SETTLEMENT AGREEMENT**

5  As a preliminary matter, as discussed above, Action Tapes' warranties in

6  paragraph 9 apply to products sold after the effective date of the Settlement Agreement,

7  and <u>not</u> products sold and delivered pursuant to the Distribution Agreement, like the 39

8  designs at issue.  Therefore, whether Action Tapes' warranties in paragraph 9 have

9  terminated makes no difference because paragraph 9 is inapplicable to the 39 Designs,

10  which were allegedly sold under the Distribution Agreement.

11  However, for argument's sake, if paragraph 9 had applied to the 39 Designs sold

12  under the Distribution Agreement, Action Tapes' indemnity obligations in paragraph

13  9(b) would have automatically expired on January 1, 2007.  Paragraph 21 of the

14  Settlement Agreement reads, "<u>Unless otherwise specified herein</u>, all of the obligations

15  of the Parties, except for the mutual releases in paragraphs 7 and 8, automatically expire

16  one (1) year from the Effective Date of this Agreement."  MSA, ¶ 21 (emphasis added).

17  The plain and ordinary meaning of this provision is that <u>unless a section of the</u>

18  <u>Settlement Agreement giving rise to an obligation of a party specifies that a certain</u>

19  <u>expiration time applies, or specifies that no expiration date applies</u>, the expiration date

20  will be one year (January 1, 2007) from the Settlement Agreement's effective date

21  (January 1, 2006).  Since paragraph 9 does not specify any particular expiration, even if

22  paragraph 9 had applied to the 39 Designs, paragraph 21 would have operated to

23  terminate Action Tapes' indemnification duties.

24  **E.    THE SETTLEMENT AGREEMENT DEMONSTRATES THAT THE**

25  **PARTIES INTENDED TO SETTLE ALL CLAIMS RELATED TO**

26  **BUSINESS CONDUCTED UNDER THE DISTRIBUTION AGREEMENT**

27  The courts' primary concern in construing a written contract is to ascertain the

28  true intent of the parties <u>as expressed in the instrument</u>.  ERG Res., <u>supra</u>, 2009 WL

18

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

3491049.  The <u>entire instrument</u>, taken by its four corners, must be read and considered to determine the true intention of the parties.  <u>Worldwide Asset Purchasing, L.L.C.,</u> <u>supra</u>, 290 S.W. 3d at 560.  The Settlement Agreement itself demonstrates again and again that the parties intended to settle and release one another from all claims related to business conducted under the Distribution Agreement:

- The opening "Recitals" of the Settlement Agreement explained that, "certain disputes [had] arisen between Tacony and [Action Tapes] about each others' performance under the Distribution Agreement and the interpretation of certain language in the Distribution Agreement…[and] as a resut of the Mediation, the Parties have agreed to compromise and settle their disputes…and memorialize their agreement in this Mediation and Settlement Agreement."  Gardner Decl., Exh. B, Recitals.

- Paragraph 1 of the Settlement Agreement terminated the Distribution Agreement.  <u>Id.</u> at ¶1.

- Paragraph 3 reads, in part, "[a]ll claims for the payment of money under the Distribution Agreement by each Party against the other Party shall be and is hereby compromised, settled, released, waived, and discharged…"  <u>Id.</u> at ¶3.

- In paragraphs 7 and 8, each party agreed to "now and forever hereby compromise, settle, release and discharge" the other party "of and from any and all debts, claims, demands, causes of action…contracts, agreements, promises, liabilities, damages…whatsoever, known or unknown, accrued or unaccrued, suspected or unsuspected, in law or in equity, whether having arisen or hereafter to arise…from any event occurring contemporaneously with or prior to the Effective Date of the [Settlement Agreement], including but not limited to any claims actually asserted or which could have been asserted…to date."  <u>Id.</u> at ¶¶7-8 (emphasis added).  These mutual releases applied to all prior business dealings between Action Tapes and Tacony, including any

19

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

claims arising from products previously shipped under the Distribution Agreement. <u>Id.</u>

- Paragraph 16 addressed that the parties must indemnify one another "from and against all suits…[and] claims…arising out of, resulting from or related to third-party claims for damages…associated with the…the sale of…products which are the subject <u>of the Distribution Agreement</u>…or by any breach by either party <u>of the Distribution Agreement</u>." <u>Id.</u> at ¶16(a) (emphasis added). However, the parties' indemnification obligations expired one year after the termination of the Settlement Agreement. <u>Id.</u> at 16(d). Therefore, the parties' indemnification obligations expired on or before January 1, 2008—one year after the termination of the Settlement Agreement on January 1, 2007. <u>Id.</u> at ¶21.

- Finally, paragraph 21 reads, "Unless otherwise specified herein, all of the obligations of the Parties, <u>except for the mutual releases in paragraphs 7 and 8</u>, automatically expire one (1) year from the Effective Date of this Agreement." <u>Id.</u> (emphasis added). This provision is especially indicative of the parties' intent. Though the parties included a sunset provision regarding <u>all</u> of one another's obligations under the Settlement Agreement, the parties chose to specifically distinguish the mutual releases in paragraphs 7 and 8 to ensure that the releases would continue in perpetuity.

The entire Settlement Agreement, "taken by its four corners," reveals that "the true intention of the parties" was to settle and release one another from all claims related to business under the Distribution Agreement. <u>Worldwide Asset Purchasing, L.L.C., supra,</u> 290 S.W. 3d at 560.

/ / /

/ / /

/ / /

/ / /

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

**F.    BECAUSE THE SETTLEMENT AGREEMENT IS NOT AMBIGUOUS, THE COURT SHOULD GRANT THE INSTANT MOTION FOR SUMMARY JUDGMENT**

An ambiguity does not necessarily arise simply because the parties advance different interpretations of a contract's language. <u>Cross Timbers Oil Co.</u>, 22 S.W.3d at 26. In California and in Texas, determining whether an ambiguity exists is a question of law for the court. <u>Southern Chemical Corp., supra</u>, 2009 WL 3110941 at *2; <u>S. Cal. Gas Co., supra</u>, 336 F.3d 885, 889 (2003). "<u>A contract that may be given a definite or certain meaning is **not** ambiguous and will be construed as a matter of law</u>." <u>Id.</u> (emphasis added).

The Settlement Agreement is not ambiguous. Tacony misplaces its reliance on paragraph 9(b), arguing that the warranties therein apply to the 39 Designs. In fact, paragraph 9 uses syntax indicating it applies only to future sales ("the products it provides"), it is copied verbatim from paragraph 10 of the Distribution Agreement which also only applied to future sales, and there is no language stating or even suggesting that it applies to products sold under the Distribution Agreement.

Moreover, as explained above, if paragraph 9 of the Settlement Agreement applied to products sold under the Distribution Agreement, both the broad scope of the release in paragraph 7 and the limited duration of the express indemnity and limits of liability in paragraph 16 become <u>pointless</u>. If, however, paragraph 9 is understood to apply to the future sale of products, following the effective date of the Settlement Agreement, there is no conflict among the various provisions in the Settlement Agreement. Tacony's reading of paragraph 9 interprets "a single contract provision…so as to destroy and contradict other express provisions and the whole tenor and effect of the parties' contract" while Action Tapes' explanation of paragraph 9 "harmonizes and effectuate all of its provisions." <u>Lavaca Bay Autoworld, L.L.C., supra,</u> 103 S.W.3d at 659; <u>Southern Chemical Corp., supra,</u> at *2; <u>Basic Energy Services, LP, supra,</u> 2009 WL 3092466 at *4; <u>see also Killeen, supra,</u> 248 S.W.3d at 349.

21

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

1    When contract terms are clear and unambiguous, summary judgment is

2  appropriate, even if the parties disagree as to the meaning of the contract terms.

3  <u>Kassbaum, supra</u>, 235 F.3d at 491; <u>United Bhd. of Carpenters and Joiners of Am.,</u>

4  <u>Lathers Local 42-L, supra</u>, 73 F.3d at 961.  As demonstrated herein, the Settlement

5  Agreement, including paragraph 9, is not ambiguous.  Therefore, summary judgment in

6  favor of Action Tapes is both appropriate and just.

7                                                 **VI.**

8                                        **CONCLUSION**

9        For the reasons stated above, Action Tapes respectfully requests that this

10  Honorable Court grant its Motion for Summary Judgment against Tacony's Third Party

11  Complaint.

12                                        Respectfully submitted,

13  DATED:  November 9, 2009           RICHARDSON & PATEL LLP

14

15                                        /s/ADDISON ADAMS

16

17

18

19

20

21

22

23

24

25

26

27

28

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**

1

## CERTIFICATE OF SERVICE

2    I hereby certify that a copy of **ACTION TAPES, INC.'S NOTICE OF**

3   **MOTION AND MOTION FOR SUMMARY JUDGMENT, OR**

4   **ALTERNATIVELY, SUMMARY ADJUDICATION; SUPPLEMENTAL**

5   **MEMORANDUM OF POINTS AND AUTHORITIES** was filed electronically with

6   the Clerk of the Court this 9th day of November 2009, and will be served electronically

7   to designated CM/ECF participant counsel through the court's electronic filing system

8   and mailed served to the other interested parties in this action.

9

10

11                                    /s/ Maria T. Castro

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ACTION TAPES, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT**